429 P.2d 949

**Lucille DUNBAR, Appellant,**

v.

**H. S. DUNBAR, Appellee.**

**No. 8456.**

Supreme Court of Arizona,
In Banc.
July 7, 1967.

Gerald G. Eastman, Phoenix, for appellant.

Barry B. Cline, Prescott, for appellee.

STRUCKMEYER, Justice.

This case originated as an action for divorce brought by appellant, Lucille Dunbar, with a cross complaint by appellee, H. S. Dunbar. Divorce was granted in favor of Lucille Dunbar, and from the trial court's rulings on the custody of the minor child and division of property of the parties, she brings this appeal.

The parties were married at Gallup, New Mexico, on December 21, 1955. In May, 1956, appellee secured a divorce from appellant. The parties were remarried August 9, 1956, and lived together as man and wife until February 16, 1960, when appellant filed suit for divorce against appellee. On March 2, 1960, while the parties were separated and this second divorce was pending, in contemplation of furthering the marital relationship, the parties entered into an instrument entitled "Agreement and Settlement of Marital and Property Differences," hereinafter called reconciliation agreement, whereby both parties agreed that all property then owned by either of them, both real and personal, was to be community property. The divorce complaint was thereupon dismissed, and the parties reassumed the marriage relation for two and one-half years until November 23, 1962, when the appellant filed the present suit for divorce, alleging cruelty. Appellant sought a division of the property in accordance with the 1960 reconciliation agreement and custody of the four-year-old minor child of the parties, Debra Mashell Dunbar, and child support for this child.

The custody and support of the children issue of the previous marriages of the parties are not involved in this appeal.

Appellee denied the charges of cruelty, counterclaimed for divorce from the appellant on the grounds of cruelty, claimed that the 1960 reconciliation agreement was void for the reason that it was procured through fraud and duress, and asked that he be given custody of the child.

Upon the date set for trial, appellant failed to put in a personal appearance, but was represented by counsel. Counsel for appellant filed a motion for continuance at that time which was denied, and the court proceeded to hear the evidence on both sides. Appellant was granted a divorce on her complaint. The trial court awarded custody of the child to both parents, with physical custody in the appellant, and the appellee was ordered to pay $75 a month for child support.

At the trial, the lower court granted appellant's motion to strike from the counterclaim the charge of fraud, but did find, as a mixed question of fact and law, that appellee had signed the reconciliation agreement under duress and, therefore, the reconciliation agreement was void. Appellee was directed to pay the appellant $5,000, payable at the rate of $100 per month in lieu of any rights in the real and personal property awarded to appellee. After perfecting this appeal and filing the answering brief, appellee's then counsel withdrew and present counsel was substituted as appellee's attorney. No further briefs were filed.

The issues with which this appeal is concerned are limited to two basic questions. First, whether the trial court abused its discretion by awarding the custody of the minor child to both parents with physical custody in the plaintiff; and second, whether the trial court erred in finding that the reconciliation agreement was entered into under duress and was therefore invalid.

## I. THE CUSTODY

The trial court entered this order:

"2. That the care, custody and control of the minor child of the parties hereto, to wit, Debra Mashell, should be vested in both the plaintiff and de-. fendant, with the physical custody to be awarded to the plaintiff, until the further order of this Court; * * *."

Appellee contends that the dual custody arrangement does not constitute a divided custody because it is qualified by the fact that the actual physical custody is awarded to the appellant with reasonable visitation in the appellee, but we think this provision makes the actual custody so uncertain that it can only lead to future difficulties.

The final determination of custody in a divorce action is and must be determined by what the court considers to be in the best interest of the child. The wishes of the parents, of course, may and should be considered; but their happiness and their desires will never be allowed to interfere with the child's true welfare. Bradstreet v. Bradstreet, 34 Ariz. 340, 271 P.2d 717. See also Andro v. Andro, 97 Ariz. 302, 400 P.2d 105, reh. den. 98 Ariz. 1, 401 P.2d 404. While it is true that the trial court stands in the better position to determine what will be in the best interest of the child, nevertheless this Court will not hesitate to modify or reverse where the record discloses an abuse of judicial discretion. Smith v. Smith, 90 Ariz. 190, 367 P.2d 230.

It is the declared policy of this state that the age of a minor child is a significant consideration in the determination of custody. A.R.S. § 14–846, subsec. B, provides as follows:

"B. As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but, *other things being equal, if the child is of tender years, it shall be given to the mother*. If the child is of an age requiring education and preparation for labor or business, then to the father." (Emphasis supplied.)

The welfare of this child depends upon the attitude of her parents and their treatment of her. In Ward v. Ward, 88 Ariz. 130, 353 P.2d 895, this Court interpreted A.R.S. § 14–846, subsec. B, supra:

"It is clear from the quoted language that the policy of this state is to recognize the rights and duties of *both* divorced parents in the upbringing of a minor child, and to take into account the fact that the age of the child may substantially affect the nature of those rights and duties. While still in infancy, the child is entitled to its mother's care and devotion." 88 Ariz. at 137, 353 P.2d at 900.

And,

"Of course, the statutory preference * * on these facts is limited by the phrase— 'other things being equal'. Whether 'other things' are equal is a question of fact, the most important aspect of which is whether both parents are fit and proper persons to have custody of the child. That is, if neither parent is found to be unfit, and if the welfare of the child does not clearly demand otherwise, 'other things' are equal, and the policy declared by the statute *should be adhered to.*" 88 Ariz. at 138, 353 P.2d at 901. (Emphasis supplied.)

There was no finding that Lucille Dunbar is not a fit and proper person to have custody and control of her daughter. To the contrary, the trial court impliedly found that both father and mother were fit and proper persons to have custody of this child when it granted custody to both parties. From this, we conclude that "other things" are equal and, therefore, the court must abide by the policy of the statute which requires that custody "shall" be given to the mother, appellant herein.

## 2. THE RECONCILIATION AGREEMENT

This brings us to appellant's argument that the trial court erred in declaring the reconciliation agreement invalid based on

the finding that it was procured through duress.

The agreement was, as its name implies, an "Agreement and Settlement of Marital and Property Differences," under which the ownership of certain properties was agreed to and settled between the parties, and provided:

"That in consequence of unhappy differences which have developed between husband and wife and which have resulted in husband and wife living separate and apart and further have resulted in the filing of certain suits by wife against husband, and further in consideration of love and affection resulting in reconciliation between husband and wife and sincere bona fide desire on part of both husband and wife to live together as man and wife and as far as possible to alleviate any further difficulties between said husband and wife, and further in consideration of the sum of One ($1.00) Dollar in hand paid by wife to husband, receipt whereof is hereby acknowledged, the husband and wife agree as follows:

"1—That all property which they own and which may now be considered as community or which may now be considered as separate property of the parties, shall from this date forward be declared to be irrevocably the community property of both husband and wife * * *."

Thus the reconciliation agreement in this case was based on a present separation and in contemplation of resuming the marital relationship.

"The law encourages the resumption of marital relations. Since the purpose of a reconciliation agreement is to restore marital relations, it harmonizes with public policy and will be upheld. [Cases cited.]" Hanner v. Hanner, 95 Ariz. 191, 193, 388 P.2d 239, 241.

The appellee testified as follows:

"Q In 1960 at the time she filed this divorce, the first divorce action against you, you had had during the period of years you had lived with her you had some discussion and dissension about the relative property interests belonging to you and to her, is that right?

"A Yes.

"Q And that was one of the contentions in the Complaint which was filed in 1960, is that right?

"A Yes.

"Q And then you agreed with her that you would settle this matter in the form of a formal Agreement which you executed, is that right?

"A Provided there would be no divorce, yes.

"Q You agreed with her as recited in this Agreement that you would both act in good faith and attempt to make a success of your marriage, is that right?

"A That's right.

"Q And you agreed to settle this dissension you had had with your wife over these years by a formal written Agreement, is that right?

"A Yes, sir, that's right."

It is claimed that the agreement was obtained under duress. We feel that a proper statement of the applicable law is set forth in the Restatement of the Law of Contracts as follows:

"§ 492. DEFINITION OF DURESS.

"Duress in the Restatement of this Subject means

"(a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or

"(b) any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement."

 The test of what act or threat constitutes duress is determined by considering whether the threat placed the party entering

**356**

into the transaction in such fear as to preclude the exercise by him of free will and judgment. And see Restatement of Contracts, § 492, Comment (a).

Settlements such as are involved herein must be measured and determined in the light of the facts and surrounding circumstances. By definition, an act or threat to constitute duress must be "wrongful." We have searched the record to determine whether the appellant wrongfully induced the appellee to sign the contract and find the basis upon which duress is grounded lies solely in the appellee's contention that he signed the reconciliation agreement because he did not want a broken home. In this jurisdiction a wife, leaving her husband for just cause, may exact pecuniary consideration for resuming the marriage relation. Tyson v. Tyson, 61 Ariz. 329, 149 P.2d 674. Cf. Hanner v. Hanner, supra. It is not duress to declare an intention to resort to the courts for the purpose of insisting on what one believes are one's legal rights. Kaplan v. Kaplan, 25 Ill.2d 181, 182 N.E.2d 706.

This being so, we can find no wrongful act on the part of the appellant which could be said to have induced the appellee to enter the agreement. To the contrary, appellee testified that the whole tenure of the contract was to the effect that the parties would go back together and act in good faith to try to make a success of their marriage. The whole purpose of the reconciliation agreement was to *uphold the marriage*. Such an agreement is in harmony with public policy. It would be a subversion of good morals and sound public policy to permit the appellee to avoid the obligations of his contract when the duress claimed is, by nature, the valid and whole consideration of the contract.

Judgment reversed with directions to enter judgment in conformity with the views expressed.

BERNSTEIN, C. J., McFARLAND, V. C. J., and UDALL and LOCKWOOD, JJ., concur.