507 P.2d 1017

**Frances Ramirez OREZZA, Appellant,**

**v.**

**Carlos RAMIREZ and Katie Ramirez, his wife; Carlos Ramirez, Jr., by and through his next friend and father, Carlos Ramirez; and Carlos Ramirez, Appellees.**

**No. I CA–CIV 1993.**

Court of Appeals of Arizona, Division 1.

March 27, 1973.

Biaett & Bahde by Hewitt Biaett, Phoenix, for appellant.

DePrima, Aranda & deLeon by Thomas Aranda, Jr., Phoenix, for appellees.

HOWARD, Judge.

This appeal arises out of an order issued after a two-day trial to the court, sitting without a jury, on two causes of action consolidated upon stipulation of counsel.

The first, Cause No. C–256732, was filed on December 28, 1971, by Frances Orezza as the mother of Carlos Ramirez, Jr., against Carlos and Katie Ramirez, husband and wife, praying that she have and be awarded the care custody and control of her son, born out of wedlock on July 30, 1964 in Phoenix, Arizona.

The second, Cause No. C–256858, was filed two days later by Carlos Ramirez, Jr. by his next friend and father, Carlos Ramirez, against Frances Ramirez Orezza, praying that Carlos Ramirez be established as the natural father of Carlos Ramirez, Jr., and that he be granted the care, custody and control of the minor child, with reasonable visitation rights to the mother.

The causes did not involve any change or modification of a prior decree or order of the superior court, and were matters of initial impression for determination by the trial judge.

Frances Ramirez Orezza, appellant, appeals from the trial court's final order which recites in part:

"The Court finds that, while both parents are fit, in the legal sense to exercise custody and control of the minor child, the future welfare of the child will clearly best be served by allowing custody to remain with his natural father, as it has for the last one and one-half years. While the Court recognizes the strong interests of the minor,[1] it is com-

1. The minute entry dated January 24, 1972, read: "While the Court recog-nizes the strong interest of the *mother*, . . ."

pelled to find that the best interests of the child would not be served at this time by changing custody."

The court therefore decreed Carlos Ramirez, Sr. the father of Carlos Ramirez, Jr., and granted the care, custody and control of the minor child to his natural father, subject to reasonable visitation rights in his mother.

The pivotal question raised on appeal is whether it was an abuse of discretion by the trial court, under the particular facts and circumstances presented, after finding that both parents were fit in the legal sense to exercise custody and control of the minor child, to grant the care, custody and control of Carlos Ramirez, Jr. to his natural father, subject to reasonable visitation rights in his mother, Frances Orezza.

The salient facts, viewed in a light most favorable to upholding the order below, are as follows. Carlos Ramirez, Jr. was born out of wedlock on July 30, 1964, to Frances Ramirez, a single woman, not related to the natural father, Carlos Ramirez. At the time of the child's birth, the father was married to his present wife, Katie Ramirez, who is unable to have any children of her own. Mr. Ramirez testified at trial that during appellant's pregnancy he denied paternity because of fear. He informally acknowledged paternity in 1966 when he began to visit the child on weekends. Katie Ramirez was aware of this relationship and also made periodic visits to see Carlos, Jr. in the home of appellant. From 1966 until the summer of 1970, when Carlos, Jr. went to live in the home of Carlos and Katie Ramirez, appellant also allowed the child to spend some weekends at the Ramirez home. However, during his first six years, Carlos, Jr. was basically cared for and supported by his natural mother. Appellant testified that for three weeks after Carlos, Jr.'s birth, Mr. Ramirez sent her $20 a week, but did not support the child after that until the summer of 1970 when she allowed him to live with Mr. and Mrs. Ramirez, subject to certain conditions.

Appellant married Manuel Orezza on November 9, 1968, and at the time of trial they were the parents of a two year-old daughter. She was employed full time and had been working for the same firm for the past four years. During the summer of 1970, Mr. Ramirez became dissatisfied with the school Carlos, Jr. was attending and suggested to appellant that Carlos, Jr. live with him in order to attend a parochial school near his home, Mount Carmel. Appellant testified that she debated this question and then decided to allow Carlos, Jr. to live with his father after being told that he would never try to keep Carlos, Jr. from her and that Carlos, Jr. would be brought home for weekends, holidays and summer vacations.

Thereafter, appellant permitted Carlos, Jr. to live with Mr. and Mrs. Ramirez during the week. In addition to attending Mount Carmel School, Mr. Ramirez provided Carlos, Jr. with remedial tutoring in arithmetic. The tutor was Carlos Jr.'s first grade teacher. She testified that the special tutoring enabled Carlos, Jr. to catch up to his class so that he could advance to the next level. She also expressed the opinion that Carlos, Jr. had developed a stable social foundation at Mount Carmel and that to pull him out of his present environment, especially in the middle of the school year, "would be bad for him." This teacher also commented on her observations of the Ramirez home. She stated that the home was always neat and clean; that there was a "very good relationship" between Mrs. Ramirez and Carlos, Jr.; and that for three or four months she did not know that they were not mother and son.

Mrs. Ramirez also obtained counselling services for Carlos, Jr. at Arizona State University, where the child engaged in play-therapy and underwent a series of tests, including the Stanford-Binet Intelligence Test. The counsellor testified that Mrs. Ramirez sought these services because Carlos, Jr. was not doing well in

school and she wanted to ascertain the reasons. The counsellor testified that during the intake interview with Mrs. Ramirez he learned that Carlos, Jr. was living in two households and had, in essence, two sets of parents, and that perhaps this situation was upsetting him emotionally and affecting his school work. The counsellor subsequently prescribed a course of counselling for the child. He ascertained that Carlos, Jr's intelligence quotient fell within the normal range, and he expressed his observation that Carlos, Jr. "was a very neat child", with "good dexterity" and "a lot of persistence". During play-therapy and role-playing the counsellor was able to have Carlos, Jr. express the feelings that he liked Katie "because she helped him"; liked his father because "he was a skydiver, and took him on trips"; and that if he could "change his father" it would be that "his father didn't have to work, so he could be home more often." The counsellor stated that Carlos, Jr. no longer needed counselling services.

The Ramirez home itself, as evidenced by photographs, contains three bedrooms, one of which is Carlos, Jr.'s. There is a large backyard with a tree house built by both Mr. Ramirez and his son, in which the boy plays every day. Carlos, Jr. also plays baseball in Little League; has taken swimming lessons; has been taken skydiving with his father; and has visited the Phoenix Zoo and Disneyland. In addition, Mr. Ramirez bought his son a pony and some calves. He also bought two Model A cars for Carlos, Jr. to work on when he is older, if he has the interest.

When Carlos, Jr. moved into his father's home in 1970, Mrs. Ramirez terminated her employment of 19 years in order to be a mother to him and to be able to see Carlos, Jr. off to school in the mornings and to be at home when he arrived after school. Several witnesses testified that in their opinion the Ramirez home was a good and beneficial one for Carlos, Jr. Mrs. Orezza's own mother testified that although she believed that her daughter

was a good and fit mother to raise Carlos, Jr., she had told her daughter "that Carlitos would be better with his daddy". She told appellant this when Mrs. Orezza "came and told me that Manuel [Mr. Orezza] was complaining about the food, Carlitos was eating too much". Mrs. Orezza and her mother had not been on speaking terms for about a year.

In addition to Mrs. Orezza's mother's testimony concerning appellant's fitness to raise Carlos, Jr., all other witnesses for appellant testified that in their opinion she had always been a good mother to her son and that for the six years she raised him he was always clean, well fed and well cared for. No one at trial, on either side, said or suggested that appellant was not a fit mother.

Mr. and Mrs. Orezza also live in a three-bedroom home in a residential, family neighborhood. If Carlos, Jr. lived with appellant, he would no longer be in the Mount Carmel school district and would have to be transferred to a new neighborhood school. As mentioned earlier, Mrs. Orezza is employed full time and her employment schedule would require that Carlos, Jr. be without her for about forty minutes each morning and two and half hours after school. Mrs. Orezza has arranged for a next-door neighbor to look after Carlos, Jr. during these periods of time.

Mr. Orezza speaks some English, but his primary language is Spanish. He testified that he would be willing to have Carlos, Jr. live in his home, would support him, treat him as his own and would be willing to adopt him as his own son. He stated that he plays with the boy, but does not know any "games", and said that their main activity together was watching television each evening.

Carlos, Jr. began to spend weekdays with Mr. and Mrs. Ramirez and weekends and holidays with Mr. and Mrs. Orezza in the summer of 1970. Appellant also allowed Carlos, Jr. to spend weekends with Mr. and

Mrs. Ramirez for such special events as skydiving meets, but stated that this became a habit, leading to arguments between herself and Mr. Ramirez. On December 18, 1971, six days after Carlos, Jr.'s communion at Mount Carmel which Katie Ramirez attended as the child's mother, Mr. Ramirez, upon advice of counsel, told appellant that she could not have Carlos, Jr. back until there was a court hearing. He testified that he sought legal counsel only after being told by Mrs. Orezza that when Carlos, Jr. was back with her for Christmas, Mr. Ramirez "would never get him back again." This dispute between the parties over the custody of Carlos, Jr. led to the litigation below.

■ Appellant acknowledges that it is axiomatic in this field of law that the primary consideration is the welfare of the child and the trial court is given broad discretion in determining what will be most beneficial for the child. Ward v. Ward, 88 Ariz. 130, 353 P.2d 895 (1960); Stapley v. Stapley, 15 Ariz.App. 64, 485 P.2d 1181 (1971). The court is guided by the best interests of the child and not the gratification of the parents. Galbraith v. Galbraith, 88 Ariz. 358, 356 P.2d 1023 (1960). These propositions are also known to be subject to the limitation that while in custody matters the trial court stands in a better position to determine what will be in the best interests of the child, the reviewing court will modify or reverse where the record discloses an abuse of discretion. Dunbar v. Dunbar, 102 Ariz. 352, 429 P.2d 949 (1967).

The crux of appellant's position is that the trial court abused its discretion in awarding to the father custody of her son, born out of wedlock, whom she raised for six years and of whom she is the natural guardian, where there was no allegation or showing that she was an unfit parent, and where, to the contrary, the trial court found that both parents were fit in the legal sense to exercise custody and control of the minor child.

Appellant bases her authority on A.R.S. § 14–846, which is an expression of the legislative policy as to the custody of children. Stapley v. Stapley, supra. The statute provides in pertinent part:

"A. In awarding custody of a minor, or in appointing a general guardian, the court shall be guided by the best interest of the child in respect to its temporal, mental and moral welfare. If the child is of sufficient age to form an intelligent preference, the court may consider that preference.

B. As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but, other things being equal, if the child is of tender years, it shall be given to the mother. If the child is of an age requiring education and preparation for labor or business, then to the father."

Our Supreme Court has set forth a test for "other things being equal" in Ward v. Ward, 88 Ariz. 130, 353 P.2d 895 (1960), subsequently modified in 88 Ariz. 285, 356 P.2d 30 (1960) on the issue of fitness, as follows:

"Whether 'other things' are equal is a question of fact, the most important aspect of which is whether both parents are fit and proper persons to have custody of the child. That is, if neither parent is found to be unfit, and if the walfare [sic] of the child does not clearly demand otherwise, 'other things' are equal, and the policy declared by the statute should be adhered to." 88 Ariz. at 138, 353 P.2d at 901.

The legislature has not, however, defined "tender years" or specified "an age requiring education and preparation for labor [and] business", and these distinctions appear to be subject to the discretionary powers of the trial court depending upon the particular facts of the case before it. Ward v. Ward, supra.

■ The rule of thumb or presumption that the welfare of a child of "tender

years" is normally best served by placing him in the custody of his mother is also subject to such considerations as the age and sex of the child, its home environment, the changing and evolving structure of the American family, and the lack of clarity in the case law as to the age at which this rule of thumb ceases to apply. *See*, H. Clark, Jr., The Law of Domestic Relations in the United States (1968); Russell v. Russell, 20 Cal.App. 457, 129 P. 467 (1913); Mullen v. Mullen, 188 Va. 259, 49 S.E.2d 349 (1948).

In Ward v. Ward, supra, the court expressed the view that while still in its infancy a child is entitled to its mother's care and devotion and when it has reached an age where worldly guidance and training are important, the child should have the benefit of its father's experience and example. Although A.R.S. § 14–846 "does not expressly so state, it is readily apparent that the latter clause is particularly applicable to the boy child emerging into young manhood." Ward v. Ward, supra.

Application of the above principles to the facts of the instant case does not disclose an abuse of discretion on the part of the trial court so as to warrant a modification or reversal. We cannot find fault with the conclusion that it is in the best interests of Carlos Ramirez, Jr. to continue living in the environment to which appellant gave her permission so that he would receive the benefits Mr. and Mrs. Ramirez could provide, such as a special education. Carlos, Jr. has made a successful social and emotional adjustment and we see no basis for disturbing the trial court's order and thereby withdraw him from the beneficial environment he has known for almost three years. The order below is therefore affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.