NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SUZANNE S., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, F.S., *Appellees.*

No. 1 CA-JV 15-0317
FILED 3-29-2016

Appeal from the Superior Court in Navajo County
No. S0900JD201400030
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

COUNSEL

John A. Banker, Taylor
By John A. Banker
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Patricia A. Orozco joined.

---

**J O N E S**, Judge:

¶1        Suzanne S. (Mother) appeals the juvenile court's order terminating her parental rights to F.S. (Child), arguing the Department of Child Safety (DCS) failed to prove by a preponderance of the evidence that severance was in Child's best interests.  For the following reasons, we affirm.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2        In 2005, Child and her older brother (Brother) were removed from their parents' care following concerns regarding Mother's substance abuse and domestic violence.  That dependency resulted in a permanent guardianship for both children with a maternal aunt and uncle in 2007.  The guardianship was revoked in 2011, and the children returned to Mother's care.[2]

¶3        In February 2014, Child and Brother were again removed from Mother's care and placed with their maternal grandmother (Grandmother) after a domestic violence incident involving Mother and her boyfriend.  Both children reported prior exposure to domestic violence, which Mother denied.  Mother also tested positive for amphetamine in a quantity twice the minimum detection level and methamphetamine at nearly twenty times the minimum detection level.[3]  Although Mother

---

[1]        We view the facts in the light most favorable to upholding the juvenile court's order terminating parental rights.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citing *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008)).

[2]        The children's biological father died in 2007.

[3]        The laboratory analyzing Mother's hair sample applied a "cut off" level of 500 picograms per milligram of hair.  The test results indicated the

admitted she had been diagnosed with schizophrenia multiple times, she denied any mental health issues or the need for mental health services. She also refused to give Child prescribed medications for attention deficit disorder and depression.

**¶4** Based upon these circumstances, DCS initiated a second dependency for Child, then nine years old, and Brother. Mother contested the dependency but submitted the issue to the juvenile court on the record. The court adjudicated the children dependent as to Mother in November 2014 on grounds of neglect, domestic violence, and substance abuse. The court adopted a case plan of guardianship for Brother, and family reunification concurrent with guardianship for Child.

**¶5** DCS offered Mother a myriad of services, including domestic violence counseling, individual counseling, parent aide services, substance abuse treatment, transportation, urinalysis testing, and child and family team meetings. Mother did not engage in any of these services, which were intended to address her substance abuse, domestic violence, and mental health issues. After Grandmother was unable to manage Mother's erratic behaviors during visits with the children, DCS required a third-party supervisor for visitation. Mother thereafter attended only one of seventeen scheduled visits with Child in November and December 2014, and the service was ultimately closed in February 2015. Mother was advised she needed to contact the DCS case manager to reinstate visitation, but she failed to do so. Mother testified she participated in one or two supervised visits with Child between November 2014 and August 2015. She tested positive for methamphetamine in March 2015, more than a year after Child was removed from her care and admitted she lived in an unsafe home surrounded by drug dealers. Mother also threatened to kill herself and jumped from a moving vehicle in October 2014, was arrested for shoplifting a bottle of liquor in December 2014, and was incarcerated for two weeks in February 2015 following a DUI conviction.

**¶6** In April 2015, the juvenile court appointed Grandmother as Brother's permanent guardian and granted DCS's motion to change the case plan for Child to severance and adoption. DCS thereafter filed a motion to terminate the parent-child relationship, alleging severance was warranted because: (1) Mother abandoned Child; (2) Mother substantially

---

presence of amphetamine at 1,132 picograms per milligram and methamphetamine at 9,579 picograms per milligram.

neglected or willfully refused to remedy the circumstances that caused Child to be in an out-of-home placement for a period of nine months or longer; and (3) Mother was unable to discharge her parental responsibilities because of a history of chronic abuse of dangerous drugs. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(1),[4] (3), (8)(a).

**¶7**        At trial in August 2015, the DCS caseworker expressed concern regarding Mother's ongoing methamphetamine use, failure to obtain safe and stable housing, and inability to recognize Child's need for services to address her special behavioral and emotional needs. Mother testified she was unable to participate in services as a result of "communication problems" with the DCS caseworker, service providers, and Grandmother. She denied cancelling visits with Child, denied receiving correspondence related to the case, denied that DCS offered any assistance in obtaining services, denied having received the results from any drug test, and disputed the authenticity of her signature on various documents detailing her lack of compliance. The juvenile court did not find Mother's testimony credible.

**¶8**        Regarding Child's best interests, DCS offered evidence that Grandmother was willing and able to meet Child's needs and provide a permanent adoptive placement. Grandmother was successful in helping Child manage her depression, self-harming behaviors, and attention deficit disorder. Under Grandmother's care, Child was successful in transitioning from a special education classroom to mainstream classes part-time and was on the honor roll. Moreover, Child reported she felt safe with and respected Grandmother, stating, "My grandma gives me life, a roof over my head, feeds me, loves me, and makes me feel safe." A psychological evaluation of Child was consistent with reported diagnoses of attention deficit disorder and mood instability. The psychologist reported Child's mood variability could have resulted from exposure to abuse, neglect, and disorganization found in Mother's home and stressed Child's need for a stable home life.

**¶9**        At the trial, Mother's counsel asked the juvenile court to decline to sever Mother's parental rights and appoint Grandmother as Child's permanent guardian instead. DCS opposed the request. The DCS caseworker and Grandmother both testified Child has special behavioral and emotional needs, requires a lot of patience, and does not handle change well. Grandmother added that Child, now eleven years old, had expressed

---

4        Absent material changes from the relevant date, we cite a statute's current version.

a great deal of anxiety over the possibility that she would have to choose between Mother and Grandmother. And, as counsel for DCS explained:

> [DCS] had already been involved in a guardianship previously and the children were returned to [Mother]'s care and . . . we are in the same circumstance that we were in previously because of the prior guardianship, and the circumstances have not been remedied that would make [Child] safe. She needs consistency, stability, she needs to know she has a home where she's at and she can be all the time and know that she's safe, and she can't do that with [Mother].
>
> . . .
>
> [Child] deserves consistency, and not having this ongoing up and down pattern where she doesn't know what is going to happen with her in a short period, and there's concern that if the guardianship were revoked again and changed back where the child went back to [Mother]'s care that we are going to end up in the same place again.

¶10        After taking the matter under advisement, the juvenile court found DCS had proven by clear and convincing evidence that termination of Mother's parental rights was warranted because Mother had substantially neglected or willfully refused to remedy the circumstances causing Child to be placed in out-of-home care, *see* A.R.S. § 8-533(B)(8)(a), and because Mother had a history of chronic abuse of dangerous drugs and there were reasonable grounds to believe the condition would continue for a prolonged indeterminate period, *see* A.R.S. § 8-533(B)(3).[5] The court also found severance was in Child's best interests and entered an order terminating Mother's parental rights. Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶11        To terminate parental rights, the juvenile court must find by a preponderance of the evidence that severance is in the child's best

---

[5]        The juvenile court found DCS had not proven severance was warranted on the ground of abandonment. *See* A.R.S. § 8-533(B)(1).

interests. A.R.S. § 8-533(B); Ariz. R.P. Juv. Ct. 66(C); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005).[6] Mother does not dispute Child would benefit from severance, but argues the court erred in terminating her parental rights when a permanent guardianship was "a less drastic and equally beneficial alternative."

¶12 Mother does not cite any authority to support her contention that, after finding a statutory ground for severance, the juvenile court must consider alternatives to severance, and we are aware of none. Indeed, the juvenile court lacked the power to order a permanent guardianship because Mother did not file a verified motion in compliance with A.R.S. § 8-872 seeking appointment of a guardian. *See Ariz. Dep't of Econ. Sec. v. Stanford*, 234 Ariz. 477, 479-80, ¶¶ 8-13 (App. 2014) (concluding the juvenile court could not initiate a guardianship proceeding absent a motion filed pursuant to A.R.S. § 8-872). Moreover, although permanent guardianship and adoption may offer some of the same benefits, a permanent guardianship is only appropriate where "[t]he likelihood that the child would be adopted is remote or termination of parental rights is *not* in the child's best interests." A.R.S. § 8-871 (emphasis added). Neither condition applies here. Therefore, we treat mother's request as a challenge to the sufficiency of the evidence to support the best interests finding.

¶13 We review the propriety of a best interests finding for an abuse of discretion. *Orezza v. Ramirez*, 19 Ariz. App. 405, 409 (1973) (citing *Dunbar v. Dunbar*, 102 Ariz. 352, 354 (1967)). We do not reweigh the evidence; the trier of fact — here, the juvenile court — "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002)). Accordingly, we will affirm a termination order unless there is no reasonable evidence to support the court's findings. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998) (citing *Maricopa Cnty. Juv. Action No. JS-4374*, 137 Ariz. 19, 21 (App. 1983), and *Maricopa Cnty. Juv. Action No. JS-378*, 21 Ariz. App. 202, 204 (1974)).

---

[6] DCS must also prove at least one of the statutory grounds for severance by clear and convincing evidence, A.R.S. § 8-533(B); Ariz. R.P. Juv. Ct. 66(C); *Kent K.*, 210 Ariz. at 288, ¶ 41, but Mother does not argue insufficient evidence supports this finding.

**¶14** Where severance is sought based upon the child's length of time in an out-of-home placement, *see* A.R.S. § 8-533(B)(8), the opportunity for permanency is a benefit to the child where "'parents maintain parental rights but refuse to assume parental responsibilities,'" *Oscar O.*, 209 Ariz. at 337, ¶ 16 (quoting *Maricopa Cnty. Juv. Action No. JS-6520*, 157 Ariz. 238, 243 (App. 1988), and citing *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18 (App. 1998)). In evaluating the child's opportunity for permanency, the court considers whether there is a current plan for the child's adoption and whether the current placement is meeting the child's needs. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23 (App. 2013) (citations omitted).

**¶15** Here, the juvenile court made a specific finding that severance was in Child's best interests because "there is a relative who is willing to adopt her and that would provide her the stability and continuity of care that [M]other has not been able or willing to provide and would allow [Child] to continue to make progress in dealing with her depression and ADHD." This finding, summarizing the benefits of severance, is supported by the record, which reflects Grandmother was willing and able to adopt Child and had been actively engaged in management and support of Child's special needs and that Child was particularly sensitive to the disruption caused by Mother's erratic behavior.

**¶16** Moreover, although a best interests finding does not require proof that the child would suffer a detriment if severance is not granted, *see Oscar O.*, 209 Ariz. at 334, ¶ 6 (explaining termination is in a child's best interests if the child "would derive an affirmative benefit from termination *or* incur a detriment by continuing in the relationship" — not both) (emphasis added) (citations omitted), reasonable evidence also supports a finding that maintaining the parental bond would be detrimental to Child. Mother does not contest that she is unable or unwilling to parent Child as a result of her chronic substance abuse and failure to address her domestic violence and mental health issues. *See* A.R.S. § 8-533(B)(3), (8)(a); *Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960). Additionally, Child has already experienced a failed attempt at permanency through the previous guardianship and expressed anxiety at being left to choose between Mother and Grandmother. Creating a guardianship would harm Child by keeping open the possibility that Mother might regain care and custody of Child, lending credence to Child's fears that Mother would do so.

**¶17** Reasonable evidence supports the juvenile court's finding that severance was in Child's best interests, and we find no abuse of discretion.

**CONCLUSION**

**¶18** The juvenile court's order terminating Mother's parental rights to Child is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama