NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARK T., *Appellant*,

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, F.W., A.T., L.T.,
*Appellees*.

No. 1 CA-JV 15-0385
FILED 5-26-2016

Appeal from the Superior Court in Maricopa County
No.  JD527035
The Honorable Timothy J. Ryan, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Patricia K. Norris joined.

---

**J O N E S**, Judge:

**¶1**        Mark T. (Father) appeals the termination of his parental rights to A.T., L.T., and F.R. (collectively, the Children), arguing the Department of Child Safety (DCS) failed to prove: (1) the statutory grounds for severance by clear and convincing evidence, and (2) that severance was in the Children's best interests by a preponderance of the evidence.  For the following reasons, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**        In January 2013, the Children's mother (Mother), while pregnant with F.R., obtained an order of protection prohibiting all contact between Father and the older children following a domestic violence incident.  In May 2013, F.R. was born prematurely with serious stomach and other medical issues and immediately placed in the neonatal intensive care unit.  In September 2013, the hospital was prepared to release F.R., but Mother had not learned how to care for her and appeared under the influence of drugs during her visits.  The Children, then age four, two, and four months, were taken into DCS custody because of concerns that Mother was abusing methamphetamine and unable or unwilling to care for F.R.'s special needs.  The older children were placed with a maternal aunt, and F.R. with a licensed foster family prepared to address her medical issues.[2]

---

[1]        We view the facts in the light most favorable to upholding the juvenile court's order terminating parental rights.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citing *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008)).

[2]        F.R. had surgery shortly following her birth to remove portions of her small intestine and colon.  Over the course of the dependency, F.R. remained "medically fragile," under the care of a hematologist, nephrologist, pulmonologist, cardiologist, dermatologist, gastrologist, and speech pathologist to address sleep apnea, speech delays, digestive and

At the time, Father's whereabouts were unknown, and he had never met F.R. DCS immediately filed a dependency petition, alleging the Children were dependent as to Father on the grounds of abandonment and neglect.[3]

**¶3** Father was incarcerated in November 2013, and DCS was eventually able to locate him and encourage him to engage in services offered at the jail addressing parenting skills, substance abuse, and domestic violence. Father contested the dependency but submitted the issue to the juvenile court on the record. In April 2014, the court adjudicated the Children dependent as to Father and confirmed a case plan of family reunification concurrent with severance and adoption. That same month, Father pled guilty to one count of theft of means of transportation, a class three felony, and was sentenced in June 2014 to three and a half years' imprisonment with credit for two hundred days of presentence incarceration.

**¶4** Father completed numerous programs in prison, including classes addressing parenting skills, substance abuse education and prevention, anger management, public speaking, money management, critical thinking skills, job training, and Spanish language. Father wrote several letters to DCS, requested updates on the Children, and asked that they visit him in prison. He also sent several letters and cards to the Children. The Children's therapist, maternal aunt, Court-Appointed Special Advocate, and DCS case manager agreed a prison visit and/or access to the letters would be disruptive and inappropriate. F.R. had never met Father and was a medically fragile infant, and consistent with reports from family members that Father "never had a substantial relationship with any of the children" even prior to his incarceration, the older children had little, if any, memory of Father. Therefore, no visits were scheduled, and communications from Father were given to the Children's placement relative to keep for the future. Father remains incarcerated with an anticipated release date between August 2016 and May 2017.

**¶5** Because Mother refused to participate in services and Father was unavailable to parent, in September 2014, the juvenile court ordered

---

feeding issues, and high blood pressure. By the time of trial in November 2015, F.R. was developmentally on target in all areas aside from feeding, which was largely completed through a tube placed in her stomach.

[3] The Children were adjudicated dependent as to Mother in December 2013 after she failed to appear at the contested hearing.

3

the case plan change to severance and adoption over Father's objection. DCS filed a motion to terminate the parent-child relationship alleging severance was warranted as to Father as a result of his lengthy incarceration. Mother's parental rights were terminated in October 2014 when she failed to appear at trial.[4] Father contested the allegations and proceeded to trial in November 2015.

**¶6**        In addition to providing information regarding Father's incarceration, DCS presented evidence that the Children were adoptable and in adoptive placements, and severance was in the Children's best interests because it would provide them the opportunity for permanency in safe, stable homes. Father agreed the Children were in loving, stable, and appropriate placements and it would not be in their best interests to visit him in prison, but testified the Children need only wait for him to be released from prison to achieve permanency and stability because "it would only be right for them to be raised by a parent."

**¶7**        After taking the matter under advisement, the juvenile court found DCS had proven by clear and convincing evidence that termination of Father's parental rights was warranted because Father had been convicted of a felony and would be incarcerated for a length of time that would deprive the Children of a normal home for a period of years. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(4).[5] The court also found severance was in the Children's best interests and entered an order terminating Father's parental rights. Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**I.        DCS Proved Severance Was Warranted by Clear and Convincing Evidence.**

**¶8**        A parent's rights may be terminated if the juvenile court finds by clear and convincing evidence "[t]hat the parent is deprived of civil liberties due to the conviction of a felony . . . if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4); Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz.*

---

[4]        Mother does not challenge this order and is not a party to this appeal.

[5]        Absent material changes from the relevant date, we cite a statute's current version.

*Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). Father argues DCS failed to prove severance was warranted. We will affirm a termination order "unless there is no reasonable evidence to support" the court's factual findings. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998) (citing *Maricopa Cnty. Juv. Action No. JS-4374*, 137 Ariz. 19, 21 (App. 1983), and *Maricopa Cnty. Juv. Action No. JS-378*, 21 Ariz. App. 202, 204 (1974)).

**¶9** Father correctly notes there is no bright line rule as to when a sentence is sufficiently long to deprive a child of a normal home for a period of years. *See Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 440, ¶ 14 (App. 2014) (quoting *Michael J.*, 196 Ariz. at 251, ¶ 29). A "normal home" is one in which a parent has a presence. *Maricopa Cnty. Juv. Action No. JS-5609*, 149 Ariz. 573, 575 (App. 1986).

**¶10** To determine whether the statutory ground is met, the juvenile court should consider all relevant factors, including:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J.*, 196 Ariz. at 251-52, ¶ 29. No one factor is determinative, and "there is no threshold level . . . that either compels, or forbids, severance." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007). Rather, "[i]t is an individualized, fact-specific inquiry." *Id.* (citing *Michael J.*, 196 Ariz. at 251, ¶ 29).

**¶11** The juvenile court made specific findings regarding the *Michael J.* factors, noting the Children were very young when Father was incarcerated — the oldest four years of age and the youngest only an infant — and that the Children had no relationship with either parent. The court noted Father was sentenced to three and a half years in June 2014 following his conviction for theft of means of transportation, and found, with credit

for presentence incarceration and earned release,[6] would be eligible for release in May 2017. The court further found "Father's past, present and continuing incarceration has made the existence of a parent-child relationship impossible," noted Mother's parental rights had already been terminated, and concluded, "[i]n this vacuum," that the Children's placements had supplanted the parents and met the Children's needs.

¶12        Father does not challenge the juvenile court's findings. Instead, Father argues the order should be vacated because the facts are analogous to those presented in *Rocky J.* In *Rocky J.*, this Court affirmed an order declining to sever a father's parental rights where he would be released seven months after the severance trial and there was evidence that father's incarceration "was not the sole cause of the lack of a relationship" with the child. 234 Ariz. at 441-42, ¶¶ 15, 18, 23. Father likewise contends, here, that he could be released in August 2016 — nine months after the severance trial — that DCS interfered with his efforts to maintain a relationship with the Children by withholding his cards and letters from them and declining his requests for visitation in prison, and that the Children were young enough that he would have many years to parent after being released from prison before they reached majority. But, the cases are not identical,[7] and the existence of superficial similarities does not compel reversal of the juvenile court's order, particularly where, under the

---

[6]        Pursuant to A.R.S. § 41-1604.07(A), (D), a qualifying prisoner is granted an earned release credit of one day for every six days served; the remainder of the sentence is served in the community under supervision of the probation department.

[7]        For example, in *Rocky J.*, this Court found evidence that the parent-child relationship could be built through telephone calls and letters during the remaining few months of the father's incarceration, and the child's guardian ad litem opposed severance because it would deprive child of the opportunity of a relationship with the father — a decision she was too immature to make at the time — and because her current placement was having difficulty managing her behaviors. 234 Ariz. at 442, ¶¶ 19-21. In contrast, here, there was an order of protection prohibiting contact between Father and the Children at the time they were removed, the Children's attorney supported severance, the Children's placements were meeting their general and special needs, and the possibility of developing a relationship through telephone calls and letters was remote in light of the fact that there was no pre-existing relationship and the consensus that contact from Father from prison would be damaging to the Children.

applicable legal standard, no one factor is determinative. *See Christy C.*, 214 Ariz. at 450, ¶ 15.

**¶13** Father presented evidence of his release date and testified extensively regarding his repeated requests for visitation, ultimately agreeing it is not in the Children's best interests to visit him in prison. We presume the juvenile court considered this information, as well as the other relevant factors, and we will not second-guess the weight the court ultimately assigned to those circumstances so long as they are supported by the evidence. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002) (citations omitted). Here, reasonable evidence supports the court's findings, and the findings are sufficient to support the conclusion that DCS presented clear and convincing evidence that severance was warranted based upon the length of Father's incarceration. Indeed, Father's incarceration and resulting inability to parent the Children had already deprived them of a normal home for two years at the time of trial, and his sentence had yet to be completed. And even before his incarceration, Father had not seen, spoken to, or provided for the Children in ten months.

**¶14** As in *Rocky J.*, we defer to the juvenile court's superior opportunity to "'weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings,'" 234 Ariz. at 440, ¶ 12 (quoting *Pima Cnty. Dependency Action No. 93511*, 154 Ariz. 543, 546 (App. 1987)), and we find no error.

## II.    DCS Proved Severance Was in the Children's Best Interests by a Preponderance of the Evidence.

**¶15** A finding of a statutory ground for severance under A.R.S. § 8-533 does not, standing alone, justify termination of parental rights; it must also be proved by a preponderance of the evidence that termination of the parent-child relationship is in the child's best interests. *See* Ariz. R.P. Juv. Ct. 66(C); *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (citing *Michael J.*, 196 Ariz. at 249, ¶ 12). To establish best interests, it must be shown the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004). In evaluating whether severance would benefit a child by providing an opportunity for permanency, the court considers whether there is a current plan for the child's adoption and whether the current placement is meeting the child's needs. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23 (App. 2013) (citations omitted). We review the propriety of a best

interests finding for an abuse of discretion. *Orezza v. Ramirez*, 19 Ariz. App. 405, 409 (1973) (citing *Dunbar v. Dunbar*, 102 Ariz. 352, 354 (1967)).

**¶16**　　　　Father argues DCS failed to prove termination was in the Children's best interests because he presented evidence he would be willing and able to care for them upon his release.  Even assuming this to be the case, the record reflects the Children had already been in out-of-home care for over two years.  They are happy and successful with their respective placements, and the placements are willing to adopt the Children, provide a safe, stable environment that meets the Children's basic and special needs and will facilitate an ongoing relationship between them.  Severing Father's parental rights would free the Children for adoption and further the goal of permanency in a normal home — an environment Father has not provided the Children "for a period of years."  *See* A.R.S. § 8-533(B)(4).

**¶17**　　　　Reasonable evidence supports the juvenile court's conclusion that severance was in the Children's best interests, and we find no abuse of discretion.

## CONCLUSION

**¶18**　　　　The juvenile court's order terminating Father's parental rights to the Children is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama