NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JOEL M., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, S.M.,[1] *Appellees.*

No. 1 CA-JV 16-0487
FILED 5-4-2017

Appeal from the Superior Court in Maricopa County
No. JD22071
The Honorable Jeanne M. Garcia, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

---

[1] This Court, on its own motion, amends the caption to remove S.S. as a party to this appeal. *See infra* n.4.

---

## MEMORANDUM DECISION

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Paul J. McMurdie joined.

---

**J O N E S**, Judge:

**¶1**　　　　Joel M. (Father) appeals the juvenile court's order terminating his parental rights to S.M. (Child), arguing only that the Department of Child Safety (DCS) failed to prove by a preponderance of the evidence that severance was in Child's best interests.　For the following reasons, we affirm.

## FACTS[2] AND PROCEDURAL HISTORY

**¶2**　　　　Child was born in February 2015 with glutaric acidemia, a rare genetic disorder that prevents her from processing certain proteins properly.　As a result, Child requires constant monitoring, a strict diet, and isolation from other children because even common childhood illnesses are dangerous to her.

**¶3**　　　　Immediately after Child's birth, DCS advised Father and Child's mother (Mother) of concerns with their ongoing substance abuse but agreed to an in-home dependency with Mother that required Father's contact with Child be supervised.　Two weeks later, Father was arrested for driving under the influence (DUI) of methamphetamine and opiates, with Child, two of her siblings,[3] and Mother in the car, while his license was suspended for a prior DUI.　According to the arresting officer, Mother appeared under the influence of illegal substances at the time as well; a subsequent hair follicle test reflected a level of methamphetamine consistent with daily or weekly use.　DCS took temporary custody of all

---

[2]　　　We view the facts in the light most favorable to upholding the juvenile court's order terminating parental rights. *Marianne N. v. Dep't of Child Safety*, 240 Ariz. 470, 471 n.1, ¶ 1 (App. 2016) (citing *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010)).

[3]　　　Child has at least seven half-siblings, none of whom are parties to this appeal.

three children and placed Child in a licensed foster home equipped to care for a medically fragile child.  DCS then filed a petition alleging Father was neglecting Child through his ongoing substance abuse and domestic violence.  Father denied the allegations of the petition but submitted the issue of dependency on the record.  The juvenile court found Child dependent as to Father and set a case plan of family reunification concurrent with severance and adoption.[4]

¶4            Father admitted he used methamphetamine to cope with otherwise untreated bipolar disorder and expressed concern that "he cannot keep himself out of harm's way."  He was immediately referred for a substance abuse assessment and treatment, supervised visitation, case aide services, and transportation assistance.  He tested positive for methamphetamine at more than seventeen times the minimum detection level[5] the day after Child was born.  He tested positive for methamphetamine five more times in March and April 2015.  Father initially advised DCS he did not wish to participate in visitation with Child if it would be supervised, and those visits were cancelled in April 2015 because he continued to test positive for methamphetamine.

¶5            Father completed a substance abuse assessment in May 2015 and was referred for intensive outpatient substance abuse treatment.  He did not begin attending until August 2015, and then his participation was sporadic.  Meanwhile, Father began testing positive for opiates in June 2015 and benzodiazepines in September.  Father advised he was receiving prescription opioids from three separate doctors and continued to test positive for opiates until November 2015, when he "made a personal decision not to test for [DCS] anymore simply because they were making a mockery of the medications" he alleged were prescribed for a ten-year-old back injury.

---

[4]      The juvenile court also found Child dependent as to Mother.  Mother's parental rights to Child were terminated in November 2016.  Mother's appeal was dismissed in January 2017 after her counsel avowed his review of the record revealed no non-frivolous issues for this Court's review, and therefore neither she, nor Child's half-sibling, S.S., is a party to this appeal.

[5]      The laboratory analyzing Father's urine sample applied a "cut off" level of 500 nanograms per milliliter of urine.  The test results indicated the presence of methamphetamine at 8,507 nanograms per milliliter.

**¶6** Parent aide services were reinitiated in May 2015, and Father began visiting with Child at the hospital and at her medical appointments. Although Father acted appropriately with Child, the parent aide expressed concern that Father and Mother engaged in domestic violence during the visits and that Father had not addressed his substance abuse, lacked a bond with Child, and did not understand Child's medical, physical, and emotional needs or have the parenting skills to respond appropriately. Father walked out of substance abuse treatment in February 2016 because he did not find the service useful and anticipated going to prison soon for the DUI offense that led to Child's removal and therefore "had nothing else to lose."

**¶7** Father was also scheduled for a psychological evaluation with prearranged transportation three separate times and missed each appointment. A fourth evaluation was not scheduled because Father refused to engage in services.

**¶8** In March 2016, the juvenile court changed the case plan, over Father's objection, to severance and adoption. DCS immediately moved to terminate Father's parental rights, alleging severance was warranted based upon the length of time Child had been in care and Father's ongoing substance abuse. At the time, Child had been hospitalized for several days for respiratory issues after she contracted a common cold and suffered a stroke. Child's physician reported she would experience more frequent strokes and sicknesses as she got older and would likely die before age twenty.

**¶9** By the time of trial in September 2016, Child, then only nineteen months old, was placed on a continuous feeding tube and was not expected to walk or talk. She required nine scheduled therapy sessions per week in addition to her frequent medical appointments. The DCS caseworker testified Child's foster parents are medically trained and "doing really good" meeting and advocating for Child's basic and special needs, which she described as a full-time job. Additionally, Child had bonded with the foster parents and was "highly adoptable." The caseworker expressed concern with the length of time Child had been out-of-home — her entire life — and that Father had not established the sobriety or stability necessary to care for Child.

**¶10** Father denied any responsibility for DCS's involvement, testifying Child was taken into DCS custody "simply because [Mother] tested positive for meth" and that he did not participate in services because the case "was a losing battle." He also denied having a substance abuse

4

problem and testified substance abuse treatment was not a necessary or valuable service, while simultaneously admitting he had relapsed on methamphetamine in early 2016 and refusing to submit to urinalysis testing that would establish his sobriety. Although Father expressed some understanding of Child's medical needs, he had not spent more than a few hours at a time with Child and never outside of the hospital or Child's scheduled therapies. Nor did Father successfully complete any of the offered services, demonstrate any significant period of sobriety, or discontinue his domestic violence relationship with Mother.

¶11 After taking the matter under advisement, the juvenile court found DCS proved by clear and convincing evidence that termination of Father's parental rights was warranted because Father: (1) substantially neglected or willfully refused to remedy the circumstances causing Child, then under three years of age, to be placed in out-of-home care for six months or longer, *see* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(8)(b),[6] and (2) had a history of chronic abuse of various substances and there were reasonable grounds to believe the condition would continue for a prolonged, indeterminate period, *see* A.R.S. § 8-533(B)(3). The court also found severance was in Child's best interests and entered an order terminating Father's parental rights. Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶12 To terminate parental rights, the juvenile court must find by a preponderance of the evidence that severance is in the child's best interests. A.R.S. § 8-533(B); Ariz. R.P. Juv. Ct. 66(C); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005).[7] The conclusion must be supported by specific findings of fact in support of termination. Ariz. R.P. Juv. Ct. 66(F)(2)(a). Father argues there is insufficient evidence to support the finding that severance was in Child's best interests because the record is "unclear as to

---

[6] Absent material changes from the relevant date, we cite a statute's current version.

[7] DCS must also prove at least one of the statutory grounds for severance by clear and convincing evidence, A.R.S. § 8-533(B); Ariz. R.P. Juv. Ct. 66(C); *Kent K.*, 210 Ariz. at 283, ¶ 16, but Father does not argue insufficient evidence supports this finding.

whether [Child] is in an adoptive home or would be able to be adopted."[8] And, he contends, if Child is not likely to be adopted, there is no benefit to Child in terminating his parental rights in the absence of evidence that she would be harmed by maintaining parental ties to Father. We disagree in both regards.

¶13 We review the propriety of a best interests finding for an abuse of discretion. *Orezza v. Ramirez*, 19 Ariz. App. 405, 409 (1973) (citing *Dunbar v. Dunbar*, 102 Ariz. 352, 354 (1967)). We do not reweigh the evidence; the trier of fact — here, the juvenile court — "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002)). Accordingly, we will affirm a termination order unless there is no reasonable evidence to support the court's findings. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998) (citing *Maricopa Cty. Juv. Action No. JS-4374*, 137 Ariz. 19, 21 (App. 1983), and *Maricopa Cty. Juv. Action No. JS-378*, 21 Ariz. App. 202, 204 (1974)).

¶14 Termination is in a child's best interests if the child "would derive an affirmative benefit from the termination or incur a detriment by continuing the relationship." *Oscar O.*, 209 Ariz. at 334, ¶ 6 (citations omitted). Where severance is sought based upon the child's length of time in an out-of-home placement, *see* A.R.S. § 8-533(B)(8), the opportunity for permanency is a benefit to the child where "parents maintain parental rights but refuse to assume parental responsibilities," *Oscar O.*, 209 Ariz. at 337, ¶ 16 (quoting *Maricopa Cty. Juv. Action No. JS-6520*, 157 Ariz. 238, 243 (App. 1988), and citing *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18 (App. 1998)). In evaluating the child's opportunity for permanency,

---

[8] DCS argues Father waived any argument regarding the sufficiency of the juvenile court's findings by failing to raise them with the juvenile court. *See Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 21 (App. 2007) ("[A] party may not 'sit back and not call the trial court's attention to the lack of a specific finding on a critical issue, and then urge on appeal [] mere lack of a finding on that critical issue as a grounds for reversal.'") (quoting *Bayless Inv. & Trading Co. v. Bekins Moving & Storage Co.*, 26 Ariz. App. 265, 271 (1976)). Nonetheless, in our discretion, we choose to address the substance of Father's argument. *See Adams v. Valley Nat'l Bank of Ariz.*, 139 Ariz. 340, 342 (App. 1984) (recognizing the preference to decide cases on the merits rather than to dismiss summarily on procedural grounds) (citing *Clemens v. Clark*, 101 Ariz. 413, 414 (1966)).

the juvenile court considers whether the child is adoptable, whether there is a current plan for the child's adoption, and whether the current placement is meeting the child's needs. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23 (App. 2013) (citations omitted); *Audra T.*, 194 Ariz. at 377, ¶ 5 (citations omitted).

**¶15**　　　　The juvenile court made specific findings regarding Child's extensive medical needs and the foster parents' dedication to her care and safety. In contrast, the court found Father's ongoing substance abuse "prevents him from providing a good home for [Child] . . . and from exercising good judgment when it comes to caring for [Child]" — findings Father does not dispute. *See Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960) ("Inasmuch as the trial court's findings of fact are not themselves challenged by this appeal, we may assume that their accuracy is conceded.").

**¶16**　　　　These findings are supported by the record and wholly support the conclusion that termination was in Child's best interests because Child would have the opportunity to live in a safe, stable, drug-free home where all her basic and special needs were met — precisely the type of home Father had thus far been unable or unwilling to provide. *See Maricopa Cty. Juv. Action No. JS-8490*, 179 Ariz. 102, 107 (1994) (affirming the juvenile court's best interests finding, in part, because the evidence established that the child's existing placement — not the child's parent — was meeting the child's needs). This benefit exists regardless of whether a specific adoptive placement has been identified because it frees the child from the risk of neglect from an unfit parent. *See Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994) ("[DCS] need not show that it has a specific adoption plan before terminating a parent's rights.") (citing *Yavapai Cty. Juv. Action No. J-9956*, 169 Ariz. 178, 180 (App. 1991), and *JS-6520*, 157 Ariz. at 243-44). The record demonstrates Child would both benefit from severance and be harmed by continuation of the parental relationship, and we find no abuse of discretion.

**CONCLUSION**

**¶17** The order terminating Father's parental rights to Child is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA