NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

QUINTON V., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.V., *Appellees.*

No. 1 CA-JV 18-0093
FILED 11-1-2018

Appeal from the Superior Court in Maricopa County
No. JD529600
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, P.L.L.C., Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Vice Chief Judge Peter B. Swann and Judge David D. Weinzweig joined.

---

**J O N E S**, Judge:

**¶1**         Quinton V. (Father)[1] appeals the juvenile court's order terminating his parental rights to A.V. (Child), arguing the Department of Child Safety (DCS) failed to prove: (1) the statutory grounds for severance by clear and convincing evidence, and (2) that severance was in Child's best interests by a preponderance of the evidence.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**         In December 2015, Child was born substance-exposed to amphetamine.  Mother also tested positive for methamphetamine and admitted using methamphetamine while pregnant.  DCS removed Child and his four half-siblings from their parents' care and filed a petition alleging Child was dependent as to Father on the grounds of neglect.[2]  The juvenile court adjudicated Child dependent in February 2016 and adopted a case plan of family reunification.

**¶3**         Father was immediately referred for a substance abuse assessment, parent aide services, a psychological evaluation, and

---

[1]      The record inconsistently identifies Father as both "Quinton" and "Quinten."  We adopt the spelling provided within Father's notice of appeal.

[2]      DCS also alleged Child and three half-siblings were dependent as to their mother (Mother) on the grounds of neglect and substance abuse.  The juvenile court adjudicated all four of those children dependent as to Mother in February 2016 and terminated her parental rights in October 2017 after she failed to complete the required services and failed to appear at trial.  Mother did not appeal those orders and neither she, nor those half-siblings, are parties to this appeal.  A fourth half-sibling was placed with an appropriate parent and never subject to this dependency proceeding.

supervised visitation. He missed his first scheduled appointment for a substance abuse assessment but completed the intake in February 2016, and no services were recommended. At the same time, Father completed an intake for individual therapy, but he did not attend the recommended sessions. Additionally, Father failed to appear for psychological evaluations in both March and July 2016. Father attended only half of the scheduled visits, did nothing to address his codependent relationship with Mother, and did not exhibit any behavioral changes suggesting he was willing or able to ensure Child was not exposed to substance abuse or unsafe caregivers. Parent aide services were closed as unsuccessful because Father had not demonstrated an understanding of healthy relationship characteristics; parenting skills; child development; or how substance abuse affected Child, his relationship with Mother, and Mother's ability to parent. In November 2016, the DCS caseworker expressed concern that Father's "lackadaisical approach to reunification services . . . [and] lack of visits and follow-through . . . demonstrate[d he] was not serious about parenting."

**¶4**        Thereafter, Father failed to participate in an updated substance abuse assessment and the referral was closed. He missed eight scheduled urinalysis tests between November 2016 and January 2017 and failed to provide a hair follicle sample for testing on three occasions before finally testing negative for substances. The assigned parent aide reported Father did not understand how to co-parent or communicate effectively with Mother and was "extremely withdrawn, emotionally detached, and resistant to interact with children" during visitation.

**¶5**        In January 2017, DCS received a report that Mother had given birth to another child, J.V.[3] While investigating the report, DCS learned Child had been left unsupervised with Mother in violation of the safety plan.

**¶6**        Father completed a psychological evaluation in March 2017. The psychologist did not identify any mental illness or personality disorder but shared DCS's concern with Father's ongoing, codependent relationship with Mother. Nonetheless, the psychologist rated Father's chance of

---

[3]        DCS immediately removed J.V. from Mother's and Father's care. The juvenile court adjudicated J.V. dependent on the grounds of substance abuse, neglect, and failure to protect in January 2017 and then terminated both parents' rights in June 2018. Neither parent appealed those orders, and J.V. is not a party to this appeal.

developing adequate parenting skills as "fair to good" if he were to actively engage in parenting classes and family counseling and therapy.

¶7        In June 2017, the juvenile court changed the case plan, over Father's objection, to severance and adoption, and DCS moved to terminate Father's parental rights based upon his failure to remedy the circumstances causing Child to be in an out-of-home placement for longer than the statutory period. Within its motion, DCS detailed its position, stating:

> [Father] has not addressed the concerns that brought his child into care. [Father] has not set a boundary with [Mother] in regards to his child. Father . . . continues to have a relationship with [M]other that is a barrier to reunification. [Father] has not recognized the risks involved regarding placing his child in the care of [Mother]. There is a substantial likelihood that the father will not be capable of exercising proper and effective parental care and control in the near future.
>
> . . .
>
> [Father] continues to not . . . set a boundary with [Mother] and place the best interests of his child before [Mother]. Additionally, [Father] has not recognized the risks involved with placing his child in the care of [Mother] when she has not demonstrated sobriety or consistently engaged in substance abuse testing.

¶8        Shortly thereafter, Father began to comply with urinalysis testing, completed a parenting class targeted toward children ages nine to fourteen, and provided proof of housing and employment. However, Father continued to live with Mother while minimizing both her role in the dependency and the ongoing risk she posed to Child. Indeed, in July 2017, Father described Mother as "great" and "his main support" in identifying safe parenting practices.

¶9        Father was re-referred for individual counseling and parent aide services to address codependency and its effect on Child. In September 2017, on the eve of trial, Father reported he had ended his relationship with Mother "because DCS told him to" and was actively engaged in services, and the juvenile court agreed to continue the trial to allow him additional time to demonstrate his ability to parent. Rather than take advantage of this opportunity, Father stopped attending counseling altogether. Between August and December, Father attended only thirteen of thirty-three

scheduled visits with Child and less than half of the scheduled parenting skills sessions. By December, Father had been closed out of both services for lack of participation.

¶10        At trial, the DCS caseworker testified Child was both adoptable and in an adoptive placement with a younger sibling. She described Father's "main focus . . . [as] being the sole breadwinner and then leaving the care of the child[] as to his partner, regardless if the substance use was going on, and not understanding as to how that's a danger to the child[]." Accordingly, the caseworker believed severance would benefit Child by removing him from the risk of harm created by Father's lack of insight and giving him an opportunity for permanency and stability in a safe family environment.

¶11        After taking the matter under advisement, the juvenile court found DCS proved by clear and convincing evidence that termination of Father's parental rights was warranted because Father had been unable to remedy the circumstances causing Child to be placed in out-of-home care for longer than fifteen months. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(8)(c).[4] The court also found severance was in Child's best interests and entered an order terminating Father's parental rights. Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

### I.    DCS Proved Severance was Warranted by Clear and Convincing Evidence.

¶12        A parent's rights may be terminated if the juvenile court finds by clear and convincing evidence that DCS has made "a diligent effort to provide appropriate reunification services" and:

> The child has been in an out-of-home placement for a cumulative total period of fifteen months or longer . . . , the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable

---

[4]        Absent material changes from the relevant date, we cite a statute's current version.

of exercising proper and effective parental care and control in the near future.

A.R.S. § 8-533(B)(8)(c); Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). Father does not dispute the length of time Child was in out-of-home care or adequately challenge DCS's effort to provide services.[5] Instead, he argues the juvenile court abused its discretion in finding he substantially neglected to remedy the circumstances causing Child to be in an out-of-home placement, relying upon evidence that he demonstrated appropriate parenting skills during visitation and terminated his relationship with Mother.

**¶13** Severance based upon a child's time in an out-of-home placement "is not limited to those who have completely neglected or willfully refused to remedy such circumstances." *Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 576 (1994). Rather, the court is "well within its discretion in finding substantial neglect and terminating parental rights" where a parent makes only "sporadic, aborted attempts to remedy" the situation. *Id.* This scheme furthers a young child's interest in permanency by giving the parent an incentive to address his deficiencies and assume his parental responsibilities as soon as possible. *See id.*

**¶14** Here, DCS removed Child from Father's care based upon concerns regarding his ability to keep Child safe. The record reflects Father made only "sporadic, aborted attempts" to remedy those concerns. Although Father participated in several assessments at the time of removal, he did not commit to addressing DCS's concerns until Child had been in an out-of-home placement for nearly eighteen months — after the statutory period had passed and a motion to terminate was filed. And though Father points to evidence that he possessed minimally adequate parenting skills during the limited time he chose to spend with Child and eventually ended his relationship with Mother shortly before trial, the record does not demonstrate he was willing and able to care for Child without Mother. Rather, Father discontinued all services almost immediately after

---

[5] Although Father asserts the juvenile court erred in finding DCS made diligent efforts to provide rehabilitative services, he does not articulate the type or manner of services he believed were required, and the argument is waived. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 14 n.6 (App. 2011) (recognizing that the failure to develop an argument on appeal results in abandonment and waiver of the issue) (citing *State v. Moody*, 208 Ariz. 424, 452 n.9, ¶ 101 (2004)).

terminating that relationship, leaving both individual counseling and parent aide services incomplete.

¶15 We do not reweigh the evidence on appeal; as the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002)). Accordingly, we will affirm a termination order "unless there is no reasonable evidence to support" the court's factual findings. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998) (citing *Maricopa Cty. Juv. Action No. JS-4374*, 137 Ariz. 19, 21 (App. 1983), and *Maricopa Cty. Juv. Action No. JS-378*, 21 Ariz. App. 202, 204 (1974)). Sufficient evidence supports the juvenile court's findings that Father never achieved any insight into Mother's substance abuse or Child's need for a safe caregiver and would not be capable of doing so in the near future. *See Maricopa Cty. Juv. Action No. JS-8441*, 175 Ariz. 463, 468 (App. 1993) (holding that a parent who participated in some services but maintained instability in his residence and employment substantially neglected to remedy the circumstances causing the child to be in an out-of-home placement), *abrogated on other grounds by Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). Accordingly, we find no error in the conclusion that DCS proved the statutory ground for severance by clear and convincing evidence.

## II. DCS Proved Termination of the Parent-Child Relationship is in Child's Best Interests by a Preponderance of the Evidence.

¶16 To warrant termination of parental rights, DCS must also prove by a preponderance of the evidence that severance is in the child's best interests. Ariz. R.P. Juv. Ct. 66(C); *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (citing *Michael J.*, 196 Ariz. at 249, ¶ 12). To establish best interests, it must be shown that the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Oscar O.*, 209 Ariz. at 334, ¶ 6; *accord Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). The benefit to the child, particularly when severance is sought based upon the length of time in an out-of-home placement, is the opportunity for permanency instead of remaining indefinitely in a situation where "parents maintain parental rights but refuse to assume parental responsibilities." *Oscar O.*, 209 Ariz. at 337, ¶ 16 (quoting *Maricopa Cty. Juv. Action No. JS-6520*, 157 Ariz. 238, 243 (App. 1988)). The juvenile court may also consider whether the presence of a statutory ground for severance will have a negative effect on the child. *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23 (App. 2013)

(quoting *Maricopa Cty. Juv. Action No. JS-6831*, 155 Ariz. 556, 559 (App. 1988)).

**¶17** Father argues "severance is not the best option for his child." But the juvenile court has broad discretion to determine a child's best interests. *See Orezza v. Ramirez*, 19 Ariz. App. 405, 409 (1973) (citing *Ward v. Ward*, 88 Ariz. 130 (1960), and *Stapley v. Stapley*, 15 Ariz. App. 64 (1971)). Accordingly, we review the best interests finding for an abuse of discretion. *See Xavier R. v. Joseph R.*, 230 Ariz. 96, 99-100, ¶ 11 (App. 2012) (citing *Audra T.*, 194 Ariz. at 377, ¶ 2).

**¶18** In addressing best interests, the juvenile court noted that Child had been in an out-of-home placement for more than two years and, despite this lengthy period, Father had yet to show he was willing or able to parent — and particularly, able to choose appropriate caregivers for Child — or even complete services designed to address this deficiency. Although the court acknowledged "a reported bond between Father and child," it nonetheless determined Child "should not have to wait indefinitely" for Father to engage in services and demonstrate his ability to parent. Instead, the court found that Child would benefit from the opportunity to be adopted into a permanent, stable, and safe home — precisely the type of home Father had been unable or unwilling to provide in the more than two years that passed between when Child was removed and trial. Thus, the court concluded that severance and the opportunity for adoption and permanency would benefit Child, while continuing the parental relationship would harm him by exposing him to unsafe caregivers. The record supports these conclusions, and we find no abuse of discretion.

**CONCLUSION**

**¶19** The juvenile court's order terminating Father's parental rights to Child is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA