668 P.2d 905

**REPUBLIC NATIONAL LIFE INSURANCE COMPANY, a corporation, Plaintiff-Appellant,**

v.

**Roger S. RUDINE, also known as Roger S. Rodine, and Thomas Caprino, individually and as general partners of R and C Trust Company, a partnership, Defendants-Appellees.**

**No. 1 CA–CIV 5539.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 15, 1983.

Rehearing Denied April 5, 1983.

Review Denied June 8, 1983.

Holland & Postal by Robert W. Holland, Phoenix, for plaintiff-appellant.

Treon, Warnicke & Roush, P.A. by Ronald E. Warnicke, Gerrie Apker Kurtz, Charles D. Roush, Phoenix, for defendants-appellees.

## OPINION

FROEB, Presiding Judge.

The parties in this case were locked in dispute over amounts due under a note secured by a deed of trust. In the face of an approaching deadline, they entered into a stipulation that pending claims be dismissed with prejudice and judgment was entered accordingly. The following day, the party whose claims were dismissed moved to set the judgment aside on the ground of duress. The motion was granted and this appeal followed. We vacate the order and reinstate the judgment.

The undisputed facts necessary to the resolution of the appeal are as follows. Roger S. Rudine (also Rodine) and Thomas Caprino, individually and as partners of R and C Trust Company, a partnership (referred to hereafter as "R and C"), purchased the Westward Ho Hotel in Phoenix on December 20, 1977, from Republic National Life Insurance Company (referred to hereafter as "Republic"). The unpaid portion of the purchase price was represented by a note in the amount of $2,270,000.00 secured by a deed of trust under which Republic was the beneficiary and Lawyers Title of Arizona was the trustee. Within the year, specifically on September 14, 1978, R and C gave an option to purchase the hotel to Westward Ho Associates (hereafter referred to as "option purchasers"). The option was later exercised and a closing of the sale conditioned upon conveyance of clear title was scheduled for February 12, 1980. Earlier, on January 10, 1979, Republic declared R and C in default of payment under the note and accelerated the unpaid balance[1] as immediately due and owing. Republic also demanded possession of the hotel, which was refused. R and C attempted to cure their default by tendering two cashier's checks to Republic on January 15, 1979, and again on January 19, 1979, the first check covering the installments in default plus late fees, and the second check in the amount of $500.00 for reasonable attorney's and trustee's fees. Republic refused the tendered amounts and filed suit for possession of the hotel.[2] Republic also noticed a non-judicial trustee's sale of the hotel for April 29, 1979. Through a series of restraining orders and preliminary injunctions, the trustee's sale of the hotel was prevented and R and C remained in possession. R and C filed their answer to Republic's suit on February 20, 1979, and asserted two counterclaims which are the subject of this appeal. In substance, the two counterclaims sought injunctive relief and monetary damages alleging that Republic had breached the deed of trust by wrongfully declaring R and C in default and by acting

1. Republic demanded acceleration of the debt in accordance with paragraph 15 of the deed of trust which reads: "That upon default by Trustors [R and C] in the payment of any indebtedness secured hereby ... Beneficiary may declare all sums secured hereby to be immediately due and payable...."

2. Republic claimed its right to possession under A.R.S. § 33–702, which reads:
   B. A mortgage or trust deed may provide for an assignment to the mortgagee or beneficiary of the interest of the mortgagor or trustor in leases, rents, issues, profits or income from the property covered thereby, whether effective before, upon or after a default under such mortgage or trust deed or any contract secured thereby, and such assignment may be enforced without regard to the adequacy of the security or the solvency of the mortgagor or trustor by any one or more of the following methods:
   . . . .
   2. The mortgagor or beneficiary taking possession of the property, or without the mortgagor or beneficiary taking possession of the property.

maliciously and in reckless and wanton disregard of R and C's contract rights.

The dispute continued between the parties. The option purchasers exercised their option to purchase the hotel on January 30, 1980, and set February 13, 1980, as the closing deadline date because their financing commitment thereafter would be withdrawn by the lender. Faced with this deadline, R and C intensified their efforts to resolve the default and obtain release of the lien. Republic continued to insist on its terms for release of the lien as it had set forth in its October 8, 1979, letter. Although R and C contested the amounts demanded by Republic, the main stumbling block remained the demand that the counterclaims be dismissed. R and C's situation became more pressing when the option purchasers filed suit against them for specific performance of their agreement or, in the alternative, One Million Dollars in damages. Before the February 13, 1980, deadline, R and C made several unsuccessful tenders to Republic but refused to dismiss the counterclaims. Finally, on February 13, literally minutes before financing was to be withdrawn, R and C entered into a stipulation tendering all sums demanded and agreeing to dismissal of their counterclaims. In exchange, Republic agreed to release its lien on the hotel. The stipulation was made in court before a court reporter and provided for entry of the judgment dismissing the counterclaims. The judgment was entered, Republic released the hotel from the lien of the deed of trust, and the sale to the option purchasers closed.

Although presented in the context of a rule 60(c) motion to vacate order, the issue before us first requires a resolution based upon contract principles. In order to decide the merits of the rule 60(c) motion, the enforceability of the stipulation must first be decided. *See Lamb v. Arizona Country Club,* 124 Ariz. 239, 240, 603 P.2d 510, 511 n. 2 (App.1978).

At the heart of R and C's claim of duress is their argument that Republic had no legal justification to demand anything more than payment of all sums due under the deed of trust, *Best Fertilizers of Arizona, Inc. v. Burns,* 116 Ariz. 492, 570 P.2d 179, *rev'd on other grounds,* 117 Ariz. 178, 571 P.2d 675 (App.1977), which R and C contend was tendered and rejected. R and C argue that Republic wrongfully took advantage of the deadline they were faced with to force upon them dismissal of the counterclaims. On the other hand, Republic has steadfastly maintained that it had the right to demand dismissal of the counterclaims prior to releasing its lien against the hotel. Republic's position is based upon the following provisions of the deed of trust:

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTORS [R AND C] AGREE:

. . . .

3. To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; *to pay all costs and expenses of Beneficiary* and Trustee, *including* the cost of evidence or title and *attorney's fees in a reasonable sum,* in any such action or proceeding in which Beneficiary or Trustee may appear or be named and *in any suit brought by Beneficiary or Trustee to foreclose this Deed of Trust.*

4. *To pay:* (a) before delinquent, all taxes and assessments affecting said property; (b) when due, all encumbrances, charges and liens, with interest, which may hereafter be placed against the property or any part thereof and which appear to be prior or superior hereto; (c) *all costs, fees and expenses of this Trust,* including without limiting the generality of the foregoing, the fees of Trustee for issuance of any Deed of Partial Release and Partial Reconveyance or Deed or Release and Full Reconveyance, and all lawful charges, costs and expenses in the event of reinstatement of, following default in, this Deed of Trust or the obligations secured hereby.

Should Trustors fail to make any payments or to do any act as herein provided, then Beneficiary or Trustee, but without

obligation so to do but with notice to or demand upon Trustors, and without releasing Trustors from any obligation hereof, may: (a) make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; (b) *appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee;* (c) pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; (d) *and in exercising any such powers pay necessary expenses, employ counsel and pay his reasonable fees.*

5. *To pay* immediately and without demand all *sums expended by Beneficiary or Trustee pursuant to the provisions hereof,* together with interest from date of expenditure at the same rate as is provided for in the note secured by this Deed of Trust or at the highest legal rate, which ever be the greater rate. *Any amounts so paid by Beneficiary or Trustee shall become a part of the debt secured by this Deed of Trust and a lien on said premises or immediately due and payable at option of Beneficiary or Trustee.* [Emphasis added].

Republic maintains that any sums incurred for attorney's fees in successful defense of the counterclaims would be recoverable from R and C and would be secured by the lien of the deed of trust. Since it was entitled to insist upon dismissal of the counterclaims before releasing its lien, Republic argues there can be no duress as a matter of law. Therefore, it argues, the stipulation for dismissal of the counterclaims and for entry of judgment was enforceable and the stipulated judgment should not have been set aside by the trial court.

We find it unnecessary to construe the provisions of the deed of trust to decide whether Republic's interpretation of its terms is correct. We hold that Republic

was entitled to adhere to its interpretation of the deed of trust in demanding dismissal of the counterclaims and that duress did not thereby result which would justify voiding the stipulation.

■ Arizona has adopted the definition of duress set forth in *Restatement of Contracts* § 492:

Duress in the Restatement of this Subject means

(a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or

(b) any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement.

*See In re Estate of Cohen,* 105 Ariz. 337, 464 P.2d 620 (1970); *Dunbar v. Dunbar,* 102 Ariz. 352, 429 P.2d 949 (1967).[3] *In Dunbar v. Dunbar,* the court considered the question of duress in the context of a settlement between the parties. The court held:

Settlements such as are involved herein must be measured and determined in the light of the facts and surrounding circumstances. By definition, an act or threat to constitute duress must be "wrongful." * * * It is not duress to declare an intention to resort to the courts for the purpose of insisting on what one believes are one's legal rights. *Kaplan v. Kaplan,* 25 Ill.2d 181, 182 N.E.2d 706.

102 Ariz. at 356, 429 P.2d at 953. In the present case, the stipulation between the parties arose because the parties could not agree as to the meaning of the deed of trust. It was not "wrongful" for Republic to adhere to its interpretation of the deed of trust. *In re Estate of Cohen; Dunbar v. Dunbar. See also Vinnell Corp. v. State ex*

---

3. The definition has since been revised in *Restatement (Second) of Contracts* § 175(1) adopted by the American Law Institute on May

17, 1979. *See also* § 176. The conclusion we have reached in this case would not be different if the revised definition were applied.

*rel. Bob Skousen Contractor, Inc.,* 109 Ariz. 87, 505 P.2d 547 (1973); *Ellsworth v. Layton,* 97 Ariz. 115, 397 P.2d 450 (1964); *Johnson v. American National Insurance Co.,* 126 Ariz. 219, 613 P.2d 1275 (App.1980). In our opinion, Republic had the right to hold to its position that it would be potentially entitled to attorney's fees if it successfully defended against R and C's counterclaims and that payment of the attorney's fees would be secured by the lien of the deed of trust. The fact that substantial economic considerations attended the decision of R and C to stipulate to the dismissal of the counterclaims does not in and of itself constitute duress. *See LaBeach v. Beatrice Foods Co.,* 461 F.Supp. 152 (S.D.N.Y.1978); *Alexander v. Standard Oil Co.,* 97 Ill.App.3d 809, 53 Ill.Dec. 194, 423 N.E.2d 578 (1981). This is especially so where Republic's conduct did not cause the disparity in bargaining positions. 13 *Williston on Contracts,* 3rd Ed. § 1617 (1970). Moreover, R and C have acted upon the stipulation to Republic's detriment by accepting the release of lien and obtaining clear title. R and C did so knowing that they would later assert duress to prevent enforcement of the stipulation and that Republic could not be restored to its pre-bargaining position as a lienholder. Finally, R and C rely heavily upon *Leeper v. Beltrami,* 53 Cal.App.2d 195, 1 Cal.Rptr. 12, 347 P.2d 12 (1959) and *Pecos Construction Co., Inc. v. Mortgage Investment Co. of El Paso,* 80 N.M. 680, 459 P.2d 842 (1969) to support their argument for duress, but neither these two cases, nor others cited, persuade us that legal duress occurred here. Such cases involve wholly different fact situations.

R and C have also failed to demonstrate that Republic's conduct, and not their own, was the cause of the duress alleged. R and C created their own stringent circumstances when they agreed to sell the hotel free and clear of liens to the option purchasers. The option purchasers and R and C set the closing deadline, not Republic.

This is not a situation where one party extracted additional payments from another party based upon its superior bargaining position. R and C entered into the stipulation because they thought it would be a better choice than breaching their agreement with the option purchasers and pursuing a litigation remedy against Republic for the resulting damages. Nor is this a situation where one party acquiesces to avoid irreparable damage to its business or property interests. *Pleasants v. Home Federal Savings & Loan Assoc.,* 116 Ariz. 319, 569 P.2d 261 (App.1977). The most that can be said is that R and C gave up their unproven counterclaims and paid amounts claimed by Republic to be owing under the promissory note. Yet there is no certainty that R and C would have prevailed in the then pending litigation or, had they been successful, what damages would have been recoverable. At the heart of the stipulation was a controversy between the parties over amounts owing and the meaning of provisions in the deed of trust. The parties settled this controversy by stipulation. As stated by the court in *Phillips v. Musgrave,* 23 Ariz. 591, 595, 206 P. 164, 165 (1922):

> The settlement of a controversy is valid and binding, not because it is the settlement of a valid claim, but because it is the settlement of a controversy, and when such settlement is characterized by good faith the court will not look into the question of law or fact in dispute between the parties, and determine which is right. (Quoting from *Smith v. Farra,* 21 Or. 395, 28 P. 241 (1891)).

■ Even if we were to assume Republic acted erroneously by insisting upon dismissal of the counterclaims, R and C would not prevail because they have failed to demonstrate that a litigation alternative to the compromise was unavailable. R and C first became aware of Republic's position in October 1979. During the course of the following months, R and C took no legal action to resolve the issue. A party cannot prevail where it takes no action to contest the other party's position and later acquiesces in a settlement agreement. *See Joyce v. Year Investments, Inc.,* 45 Ill.App.2d 310, 196 N.E.2d 24 (1964).

We, therefore, reject R and C's argument that they entered into the stipulation because they were without a reasonable alternative. They have not shown that their contract remedy for damages resulting from the alleged breach by Republic would have been unavailable or wholly inadequate. This being so, their claim that duress forced them into a settlement stipulation is weakened proportionately.

■ Having concluded that the settlement stipulation withstands R and C's claim of duress, we return to consideration of the procedural context in which it was raised in the trial court. R and C moved to set aside the dismissal of their counterclaims on the authority of rule 60(c), Rules of Civil Procedure. In particular, R and C argued that duress is a species of fraud, thereby justifying relief under rule 60(c)(4). Additionally, they contended that the motion presented reasons justifying relief under rule 60(c)(6). We find, however, that the procedural avenues for relief raise the claim no higher than the claim of duress itself, and that claim has been rejected. Purely and simply, the order setting aside the stipulated judgment in this case cannot rest upon a rule 60(c) ground where we have found the stipulation itself to be enforceable as a contract notwithstanding the claim of duress.

For the reasons set forth, the order of the trial court setting aside the order dismissing counterclaims is vacated.

GRANT and GREER, JJ., concur.