961 F.2d 216
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 BLUE CIRCLE ATLANTIC, INC., a Delaware Corporation,
Plaintiff-Counterdefendant-Appellee,
v.
Frederick G. WOOD, Christine W. Wood, individually and as
husband and wife, and as Trustees of that certain Wood
Family Trust, dated September 20, 1986; Irma Walker, as
Trustee of that certain Walker Family Trust, dated March 14,
1983, Defendants-Counterclaimants-Appellants.
 
 No. 90-16389.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 1992.
Decided April 24, 1992.
 Before BOOCHEVER, REINHARDT and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Frederick and Christine Wood appeal the entry of summary judgment in a suit brought by Blue Circle Atlantic, Inc. to foreclose on real property owned by the Woods. The property was security for the Woods' personal guaranty of credit extended by Blue Circle to Imperial Cement Company. We affirm.
 
 STATEMENT OF FACTS
 
 3
 Frederick and Christine Wood were shareholders of Imperial Cement, Inc., an importer and distributor of bulk cement. Frederick Wood is also a lawyer and was previously general counsel for Imperial.
 
 
 4
 In April 1987, Blue Circle and Imperial agreed that Blue Circle would be Imperial's sole cement supplier. Imperial purchased cement from Blue Circle on an open account. By May 1988, Imperial's debt to Blue Circle exceeded $1.2 million. As a result, on June 27, 1988, Blue Circle as lender and Imperial as borrower entered into a Loan Agreement. The Loan Agreement and related documents were prepared by Blue Circle. Under the agreement Blue Circle deferred collection on the past due amount and agreed to loan an additional $1,700,000 to Imperial with principal and interest to be repaid as specified. Imperial executed a $4,003,450 Promissory Note in favor of Blue Circle. Payment of the Note was secured by, among other things, a Guaranty in favor of Blue Circle executed by the Woods and Henry Varela, the President of Imperial. The Guaranty was secured by deeds of trust on property owned by the Woods and co-defendant Irma Walker. The Loan Agreement contained a release of claims and an integration clause.
 
 
 5
 After execution, both sides believed the other had breached the Loan Agreement. Thus, in August 1988, Blue Circle executed a "First Amendment to Loan Agreement" which was similar to the initial agreement and involved the same parties. The Amendment also contained a release of claims.
 
 
 6
 By September 1988, Imperial realized it required additional financing to continue with its expansion plans. In December 1988, the parties entered into an agreement that Hill Top Developers, Inc. ("Hill Top") would: (a) guarantee Imperial's debt to Blue Circle, (b) secure the guaranty with first priority trust deeds on real property with an aggregate value of at least $2,945,043 and (c) obtain an option to purchase 49% of Imperial's stock. The Agreement also provided that Blue Circle would reduce Imperial's debt by $1,000,000 if certain conditions were met. The December Agreement contained a release of claims and integration clause.
 
 
 7
 After the December Agreement was signed, negotiations continued between Blue Circle and Hill Top regarding the collateralization of Hill Top's guaranty. The property initially tendered as collateral was appraised at $490,000 rather than the $4 million represented by Hill Top. Additional properties were offered that did not qualify as collateral under the December Agreement for various reasons. In addition, Imperial failed to make any payments under the December Agreement.
 
 
 8
 On May 11, 1989, Blue Circle declared a default, rescinded the conditional $1,000,000 principal reduction and accelerated the total indebtedness of $3,945,043 plus interest. Imperial then filed a Chapter 11 bankruptcy petition and subsequently converted the case to a Chapter 7 liquidation. On September 19, 1989, Blue Circle filed the present action to obtain a judgment on the Wood Guaranty and to foreclose on the Wood's Arizona property, which secured payment of the Guaranty. The Woods filed a counterclaim against Blue Circle for alleged breach of the December Agreement, misrepresentation and fraudulent inducement. On July 19, 1990, the district court granted Blue Circle's motion for summary judgment. The Woods now appeal the grant of summary judgment.
 
 DISCUSSION
 
 9
 The Woods argue that the district court applied an improper standard in granting summary judgment to Blue Circle in Blue Circle's action to foreclose on real property owned by the Woods. We review the district court's decision de novo. See Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990). Arizona law is the relevant substantive law.
 
 
 10
 Summary judgment is proper where there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard provides that the mere existence of an alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The requirement is that there be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). There is no issue unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Id. at 249 (citing First Nat'l Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968)). In the instant case material facts are presented as evidence in the Wood and Varela affidavits. Therefore, we must determine whether the fraud, economic duress and breach of contract defenses and counterclaims provide genuine issues of fact that preclude summary judgment, drawing all justifiable inferences from the evidence in favor of the Woods. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).
 
 A. Fraud
 1. Defenses
 
 11
 The Woods assert there are triable issues of material fact regarding the fraudulent inducement alleged in their defenses. They contend that Blue Circle made two misrepresentations: (i) that Blue Circle would release the Woods' real property upon the completion of perfecting a lien on replacement property offered by Hill Top; that Blue Circle "would not foreclose on Woods' ... real property" in the event the parties (Blue Circle and Hill Top) were unable to perform. See Defendants' Brief at 8-9; Civil Docket (C.D.) 37, p. 7-8. Under Arizona law the defendants have the burden of proving fraud by "clear and convincing evidence." Rhoads v. Harvey Publications, Inc., 700 P.2d 840, 844 (Ariz.Ct.App.1984) (citing General Accident Fire & Life Assurance Corp. v. Little, 443 P.2d 690 (Ariz.1968)).
 
 
 12
 In order for a statement to constitute fraud, it cannot be a representation regarding the performance of future events unless the representation was made with the present intention not to perform. Staheli v. Kauffman, 595 P.2d 172, 175 (Ariz.1979). In the instant case there is nothing to indicate Blue Circle would not have released the guarantors upon performance by Hill Top. Paragraph 5 of the December 1988 Loan Agreement states that the Woods and Varela would remain liable under their guarantees until the conditions set forth in paragraph 7 were satisfied and a final determination was made that the fair market value of Hill Top's collateral was $2,945,043. That final determination was never made. The appraisal of Hill Top's collateral indicated the property was worth far less than Hill Top had represented. The record indicates that subsequent properties offered by Hill Top continually fell short of the requirements for collateral. Because the requisite conditions were never met, Blue Circle was not required to perform.
 
 
 13
 The Woods' second fraud defense requires an examination of the parol evidence rule. The rule "renders inadmissible any evidence of prior or contemporaneous oral understandings ... which would contradict, vary or add to a written contract which was intended as the final and complete statement or integration of the parties' agreement." Pinnacle Peak Developers v. TRW Inv. Corp., 631 P.2d 540, 544 (Ariz.Ct.App.1980) (quoting Childres & Spitz, Status in the Law of Contract, 47 N.Y.U.L.Rev. 1, 6-7 (1972)). Although various courts have admitted parol evidence to show fraud in the inducement, the evidence is inadmissible when it would directly contradict a provision of a written agreement. Sun Lodge, Inc. v. Ramada Dev. Co., 606 P.2d 30, 32 (Ariz.Ct.App.1979).
 
 
 14
 In this case, Blue Circle's alleged representation that it would not foreclose even if Hill Top did not perform under the December Agreement is contrary to the clear language of that agreement. The Agreement states that the guarantees executed by the guarantor shall remain in "full force and effect" and will be "fully enforceable by [the] Lender." ER 21. The integration clause indicates the writing was the parties' final and complete statement of the agreement. Thus, the evidence of fraud to prove the Woods' second defense is barred.
 
 2. Counterclaims
 
 15
 Defendants' counterclaim also alleges fraudulent inducement. It states Blue Circle represented to the defendants that it would not bring foreclosure proceedings under the repayment terms of the June 1988 Agreement. This allegation applies only to the prior note, not the amended note executed on December 30, 1988, which the defendants admit does not limit payment to the pre-tax profits of Imperial. Hence, the argument fails because there was a new agreement.
 
 
 16
 The Woods' second counterclaim alleges breach of the December 1988 Agreement for failure to release them upon performance by Hill Top. As previously stated, Hill Top never satisfied the conditions so there was no breach of contract.
 
 
 17
 In sum, no reasonable jury would find that Blue Circle either fraudulently induced Imperial into entering the 1988 agreements or breached the December 1988 Agreement.
 
 B. Economic Duress
 
 18
 The Woods also argue that the release and integration clauses contained in the parties' December 1988 Agreement were invalid because the 1988 agreements were entered into under economic duress. Appellant Frederick Wood attested in his affidavit that Imperial was indebted to Blue Circle for approximately $1.2 million in May 1988. This indebtedness continued to grow due to additional borrowing and unpaid cement deliveries. Woods and Varela claim that Blue Circle demanded that the June 1988 Loan Agreement be executed or Blue Circle would cease supplying cement thus causing the demise of Imperial. They allege that Blue Circle repeated this demand in August and October, before the supply was actually terminated in December 1988. Blue Circle denies making such threats.
 
 
 19
 Arizona has adopted the definition of duress set forth in the Restatement of Contracts § 492:[1] a wrongful threat or conduct of one party which precludes the other party from exercising his free will. Republic Nat'l Life Ins. Co. v. Rudine, 668 P.2d 905, 908 (Ariz.Ct.App.1983). By definition, the act or threat must be wrongful to constitute duress. Id. at 908 (quoting Dunbar v. Dunbar, 429 P.2d 949, 953 (Ariz.1967)). Blue Circle's alleged threats were not wrongful in light of the substantial debt Imperial had incurred for numerous cement deliveries and loans. It would be unreasonable for Blue Circle to continue to supply cement when Imperial was failing to make the required payments for such material.
 
 
 20
 In addition, a threat to do that which a party has the right to do does not constitute duress. See Johnson v. American Nat'l Ins. Co., 613 P.2d 1275, 1282 (Ariz.Ct.App.1980). A party has a legal right to insist upon strict compliance with terms that are agreed upon. Id. In this case, Imperial agreed to purchase cement from Blue Circle. Blue Circle supplied the cement but had not received payment for its deliveries. Thus, Blue Circle was entitled to withhold delivery and such conduct did not constitute duress.
 
 
 21
 We do not find that any of the 1988 Agreements were made under economic duress. Therefore the release and integration clauses in the December Agreement are valid.
 
 CONCLUSION
 
 22
 On the basis of the facts presented, there is no evidence from which a reasonably minded juror would draw an inference of fraudulent inducement, breach of contract or economic duress by Blue Circle. Under these circumstances, the Woods have not met the requirements necessary to preclude summary judgment. Accordingly, Blue Circle is a successful party entitled to attorney's fees. Ariz.Rev.Stat.Ann. § 12-341.01. (1992).
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although this definition has been revised in Restatement (Second) of Contracts § 175(1), the Republic court stated that their conclusion regarding wrongful threat would be the same under the revised definition