NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, ex. rel. MARK BRNOVICH, *Plaintiff/Appellant*,

*v.*

MICHAEL GROH, *Defendant/Appellee*.

No. 1 CA-CV 18-0073
FILED 8-13-2019

Appeal from the Superior Court in Maricopa County
No. CV2014-009284
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

COUNSEL

Fennemore Craig, P.C., Phoenix
By Patrick Irvine, Douglas C. Northup, Taylor N. Burgoon
*Counsel for Plaintiff/Appellant*

Ashley D. Adams PLC, Scottsdale
By Ashley D. Adams
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jennifer M. Perkins joined.

---

**B R O W N,** Judge:

¶1        The State appeals the superior court's order granting Michael Groh's motion to set aside the parties' stipulated judgment in this civil forfeiture action. Because the court acted within its extensive discretion in granting the motion, we affirm.

## BACKGROUND

¶2        Groh filed a sworn declaration with his motion to set aside. The State did not controvert Groh's version of the facts; therefore, we accept them as true. *See Davis v. Davis*, 143 Ariz. 54, 57 (1984) (finding that "uncontroverted facts in the record" justified post-judgment relief); *cf. GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 5 (App. 1990) ("If the opposing party fails to present, either by affidavit or other competent evidence, facts which controvert the moving party's affidavits, the facts alleged by the moving party may be considered as true.").

¶3        In 2006, Groh was Arizona Building Systems' ("ABS") vice-president of finance. The Arizona Attorney General's Office ("AGO") opened a criminal investigation in 2011 based on allegations by the owner of ABS, William Graven, that Groh and other employees committed crimes that caused the company to go out of business. In 2014, prosecutors presented the case to a grand jury, which handed down a 21-count indictment against Groh and five co-defendants. Groh was charged with one count of theft and one count of fraudulent schemes and artifices, each a class two felony.

¶4        The State also commenced a civil forfeiture action against Groh. *See generally* Ariz. Rev. Stat. ("A.R.S.") § 13-2314(A) (authorizing a forfeiture action to prevent or remedy racketeering or illegal control of an enterprise); A.R.S. §§ 13-4301 to -4315 (outlining the procedures governing forfeiture actions, including seizure of property). The State (1) seized his property, including cash, bank accounts, vehicles, and home furnishings (collectively, the "Property"); (2) filed a notice of pending forfeiture and

seizure; and (3) filed a verified complaint seeking forfeiture of up to $45 million in real or personal property from Groh, his wife, and his co-defendants. Groh filed a notice of claim for the Property, and the court granted his motion to stay proceedings in the forfeiture action until the conclusion of his criminal proceedings.

¶5        In the meantime, Groh cooperated in the State's criminal investigation by participating in "free talks" with an assistant attorney general and Dan Woods, an AGO investigator. During these discussions, Groh maintained his innocence, asserting that Graven took money from ABS under suspicious circumstances and used it to pay for personal expenses. Groh claimed the emails on which the State's case was based were taken out of context. He asserted there were other emails that were exculpatory but said he could not produce them because he no longer had access to his work email. The State responded that the computer storing ABS emails had been destroyed. Investigator Woods told Groh he did not believe Groh's version of the facts and insisted that Groh's assertion about exculpatory evidence was a fabrication. Woods told Groh there was evidence one of his co-defendants had planned "from the beginning" to steal from ABS and that a jury would convict Groh due to "guilt by association." Woods also told Groh the co-defendants were prepared to testify against him.

¶6        Given the State's representations about the strength of its case, in April 2015, Groh pled guilty to compounding, in violation of A.R.S. § 13-2405, and securing the proceeds of an offense, in violation of A.R.S. § 13-2408, both class 6 felonies, in exchange for probation. The written plea agreement provided that Groh must

> pay restitution in a dollar amount equal to the value of assets seized in the civil forfeiture action . . . CV2014-009284. The defendant waives any claim that [he] has or could have asserted in CV2014-009284. The State will deposit into the restitution account established or that will be established in this criminal matter an amount equal to the value of assets seized . . . in CV2014-009284.

¶7        A few months later, the State, Groh, and his wife entered into a settlement agreement in the forfeiture action, and the State filed a combined "notice of settlement agreement" and "stipulation and consent to entry of judgment and order of forfeiture." In relevant part, the stipulated judgment found: (1) "Groh's charges in [the criminal matter] generally arise from the same set of operative facts giving rise to the instant civil asset

3

forfeiture case" and (2) "[i]n his plea agreement . . . Groh agreed to waive his claim to the Property seized by the State as set forth in the attached [a]ppendix." The court granted the stipulated judgment as submitted and dismissed with prejudice any claims or interests that Groh had or could have asserted with respect to the Property.

¶8 Criminal proceedings against Groh's co-defendants continued, but in February 2016, the AGO moved to withdraw as counsel in the criminal matter, citing "an actual or potential conflict of interest." The Pinal County Attorneys' Office ("PCAO") replaced the AGO as counsel of record for the State.[1] After the PCAO informed Groh that Woods had been fired from the AGO in 2015, Groh moved to withdraw from his plea agreement, alleging (1) the PCAO had received additional information supporting the defenses Groh asserted during his interviews with Woods; (2) the PCAO had told Groh the State could not prove additional charges Woods had threatened to bring against Groh to "pressure [him] into pleading guilty"; and (3) Woods was "believed to have greatly overstated the strength of the evidence . . . in his efforts to obtain as many guilty pleas . . . as possible." The State filed no opposition to Groh's motion to withdraw his plea. The superior court granted the motion in December 2016 and reinstated Groh's not-guilty plea.

¶9 The State then moved to dismiss the criminal charges against Groh, explaining that the PCAO's independent investigation produced evidence tending to disprove "many of the accusations underlying the indictments" against him and his co-defendants. For example, Graven had alleged Groh and the others were depleting ABS's assets, interfering with customer relations, and giving themselves and/or other employees unauthorized raises or expense reimbursements. Emails discovered by the PCAO, however, "were exculpatory in terms [of] the financial state of ABS" in that they explained the company's "inability to complete various projects" and revealed that the allegedly unauthorized raises and expenses had, in fact, been authorized. In January 2017, the court granted the State's motion and dismissed the criminal charges.

¶10 In June 2017, Groh moved to set aside the stipulated judgment in the forfeiture action under Arizona Rule of Civil Procedure ("Rule")

---

[1] Although the PCAO likewise replaced the AGO in this forfeiture case, the AGO later retained independent counsel.

60(b)(6).[2]  Groh's motion detailed the factual and procedural history of the criminal case as it related to the forfeiture judgment and argued the forfeiture judgment must be set aside because it was inextricably intertwined with his plea agreement, which the court had set aside with the implicit consent of the State.  In response, the State argued in relevant part that (1) a civil settlement can be undone only pursuant to principles of contract law, and (2) Groh failed to timely advance a colorable argument under Rule 60(b)(6).

¶11            Finding     that     Groh     demonstrated     "extraordinary circumstances of hardship or injustice," the superior court granted his motion and vacated the stipulated judgment, explaining in relevant part:

> [T]he criminal case was ultimately dismissed because of the discovery of exculpatory evidence, evidence that "was at odds with the original claims that the defendants committed any crimes against the victim." The Defendant's plea agreement, which was set aside prior to the State's dismissal of the criminal case, essentially required him to enter into the stipulated forfeiture judgment; it wasn't independently negotiated.  Defendant's alleged criminal conduct was the basis for both the criminal and civil forfeiture proceedings, and the State, by its own admission, now has reasons to doubt whether he was involved in criminal activity at all.
>
> . . .
>
> Defendant was required to forfeit virtually everything . . . based upon criminal activity that the State now acknowledges he may not have engaged in.

¶12            The State timely appealed.  We have jurisdiction pursuant to A.R.S. § 12-2101(A)(2) and (4).

## DISCUSSION

¶13            The State asserts the superior court abused its discretion by granting Groh's motion.  It argues subsequent events in Groh's criminal

---

[2]      Rule 60(c) was re-numbered as Rule 60(b) effective January 1, 2017 but is substantively identical to the prior rule.  For clarity, in this decision we refer to Rule 60(b) throughout.

action cannot provide a basis for relief in the forfeiture action under Rule 60(b)(6).

¶14        Rule 60(b) states:

> **Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered . . . ; (3) fraud (whether . . . intrinsic or extrinsic), misrepresentation, or other misconduct by the opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) *any other reason justifying relief.*

Ariz. R. Civ. P. 60(b)(1)–(6) (emphasis added).

¶15        Unlike the specific grounds for relief enumerated in clauses one through five, Rule 60(b)(6) is a "broad equitable power" that enables courts to vacate judgments when a party demonstrates "extraordinary circumstances of hardship or injustice." *Webb v. Erickson*, 134 Ariz. 182, 186, 187 (1982) (citation omitted); *Rogone v. Correia*, 236 Ariz. 43, 48, ¶ 12 (App. 2014). Determining whether such circumstances exist requires "fact-specific considerations informed by the [matter's particular] nature and circumstances." *Amanti Elec., Inc. v. Engineered Structures, Inc.*, 229 Ariz. 430, 432, ¶ 7 (App. 2012) (quoting *Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 83 (1st Cir. 2010)). Trial judges must therefore consider the "totality of facts and circumstances," *id.* (citation omitted), and are afforded "extensive discretion" in deciding whether Rule 60(b)(6) relief is appropriate, *Gonzalez v. Nguyen*, 243 Ariz. 531, 533, 534, ¶¶ 8, 11 (2018). Accordingly, we review the superior court's ruling for an abuse of its extensive discretion and will affirm "unless 'undisputed facts and circumstances require a contrary ruling.'" *City of Phoenix v. Geyler*, 144 Ariz. 323, 330 (1985) (citation omitted).

### A.    Timeliness

¶16        We address as a threshold issue the State's argument that the superior court erred in finding Groh's motion to set aside was timely because he did not bring it until nearly two years after the entry of the forfeiture judgment.

¶17  A motion brought under Rule 60(b)(1)-(3) must be filed within six months after the entry of judgment, but the rule does not establish a specific time limit within which a party must file a motion under clause 6. Ariz. R. Civ. P. 60(c)(1). Instead, this ground for relief is subject to the general rule that "[a] motion under Rule 60(b) must be made within a reasonable time." *Id.*; *see Gonzalez*, 243 Ariz. at 534, ¶ 12. The superior court determined Groh filed his motion within a reasonable time because "[i]t is unlikely that [Groh] would have been able to demonstrate good cause to seek vacation of the stipulated civil forfeiture judgment until the criminal case was dismissed." Given the broad equitable power vested in the court, this finding was not an abuse of the court's extensive discretion. *Gonzalez*, 243 Ariz. at 534, ¶ 11; *see also Amanti*, 229 Ariz. at 433, ¶ 10 ("[E]ven when relief might have been available under one of the first five clauses but for the fact that the time limits of the rule had elapsed, this does not necessarily preclude relief under clause (6) if the motion also raises exceptional additional circumstances that convince the court the movant should be granted relief in the interest of justice.").

### B. Extraordinary Circumstances of Hardship or Injustice

¶18  Relying on *Ackermann v. United States*, 340 U.S. 193 (1950), and several cases applying *Ackermann*, the State seems to suggest that a bright-line rule bars defendants who have made "free, calculated, deliberate choices" during litigation from obtaining relief under Rule 60(b)(6). *Ackermann*, 340 U.S. at 198. As relevant here, however, *Ackermann* stands only for the general principle that "[t]here must be an end to litigation someday." *Id.* Rule 60(b)(6), which allows relief only upon a showing of extraordinary circumstances of injustice or hardship, does not contravene that principle; indeed, *Ackermann* plainly supports the proposition that motions brought under Rule 60(b)(6) must be decided on a case-by-case basis. *See id.* at 202 (concluding that "[n]either the circumstances of petitioner nor his excuse for not appealing is so extraordinary as to bring him within . . . Rule 60(b)(6*)"); *see also Davis*, 143 Ariz. at 59 (declining to adopt any "hard-and-fast rules to determine when there are extraordinary circumstances justifying relief from judgment under [Rule 60(b)(6)]"); *Park v. Strick*, 137 Ariz. 100, 104 (1983) ("The need for finality, however, must give way in extraordinary circumstances.").

¶19  Here, the superior court began its ruling by acknowledging that "the vacation of a criminal conviction does not necessarily require the setting aside of a civil forfeiture judgment." The court then proceeded to consider the specifics of the nature and circumstances of Groh's case. The

court found the relationship between Groh's criminal plea agreement and the forfeiture action was distinguishable from the circumstances in cases the State cited in which courts declined to grant relief. The court found Groh's plea agreement "essentially required him to enter into the stipulated forfeiture judgment," in which he "forfeit[ed] virtually everything he had." Given the court's extensive discretion in this fact-specific inquiry, the State's reliance on factually distinguishable cases is not persuasive. And the State has not cited, nor have we identified, any case like this under either federal or state law addressing a Rule 60(b)(6) motion based on the unwinding of a criminal plea agreement that *required* forfeiture of the defendant's assets in a parallel civil matter.

**¶20**        Nor are we persuaded by the State's argument that the superior court erred because A.R.S. § 13-2314(H) prevents a defendant convicted of a crime from challenging the "essential allegations" of that offense in a civil proceeding. On that basis, the State asserts that any hardship or injustice Groh experienced by being forced to waive his defenses to the forfeiture action was not extraordinary because "countless defendants" face the same choice. We recognize Groh could not have defended the forfeiture action by alleging he did not commit the criminal conduct, but the State cites no authority demonstrating § 13-2314(H) would bar him from arguing certain property was not subject to forfeiture because, for example, the State had failed to meet its burden of establishing a "link between the property to be forfeited and the alleged racketeering conduct." *See In re Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, 217 Ariz. 199, 201, ¶ 7 (App. 2007). Nevertheless, the State waived this argument by not raising it in the superior court and we need not address it further. *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 15 (App. 2004).

**¶21**        The State argues further that Groh was not subjected to undue hardship or injustice because the plea negotiations were independent of the negotiations over the stipulated judgment in the forfeiture action. Groh counters that the stipulated judgment was not negotiated separately from the plea, but this factual quarrel is irrelevant to our determination. It is undisputed that the plea agreement left Groh with only two choices: (1) sign the settlement and consent to the stipulated judgment in the forfeiture, or (2) refuse to do so and thereby violate the plea agreement. On these facts, the superior court did not abuse its discretion in concluding the connection between the plea agreement and the stipulated forfeiture judgment created extraordinary circumstances of hardship or injustice.

**¶22**        The State also argues the superior court's ruling "creates a one-sided bargain for defendants" and that allowing it to stand will cause

the State to be reluctant to settle forfeiture disputes in the future. We disagree. Affirming the superior court's exercise of discretion here will not undermine Arizona's well-recognized principle of finality because the court based its decision on Groh's unique circumstances. Moreover, as the superior court recognized, the relief it granted is narrow—the court explained that its order did not "dispose of the civil forfeiture action" and "[i]t is up to the State to determine whether it should pursue the action or not." Thus, the outcome of this case is a product of the extensive discretion we afford to trial judges in determining whether to grant equitable relief due to extraordinary circumstances of hardship or injustice. Nothing in our decision should be read to suggest that Rule 60(b)(6) relief is appropriate *whenever* a defendant seeks to set aside a civil forfeiture judgment because the related criminal charges have been dismissed.

## C.      Enforceability of the Settlement Agreement

**¶23**          Citing *Lamb v. Arizona Country Club*, 124 Ariz. 239 (App. 1978), *Republic National Life Insurance Co. v. Rudine*, 137 Ariz. 62 (App. 1983), and *Emmons v. Superior Court*, 192 Ariz. 509 (App. 1998), the State also argues the superior court erred in setting aside the stipulated judgment without first determining the enforceability of the underlying settlement agreement. The State's reliance on these decisions is misplaced because they are legally and factually distinguishable from the present case.

**¶24**          In *Lamb*, the parties resolved a quiet title action through a settlement agreement and then stipulated to a judgment dividing the property at issue. 124 Ariz. at 239. After realizing the settlement agreement did not grant "as much property as they thought they bargained for," the Lambs moved to vacate the judgment under Rule 60(b), and the superior court denied their motion. *Id*. at 239–40. On appeal, we concluded the superior court did not abuse its discretion, in part because "[t]he nature of the [Lambs'] motion was . . . to combine the discretionary provisions of Rule 60 with the substantive rules of contract law in order to gain relief from both the judgment and the settlement"; thus, "as presented to the trial court, the settlement had to be successfully attacked before the judgment would be vacated." *Lamb*, 124 Ariz. at 230. In a footnote, we addressed the "procedural dilemma in this situation," stating that

> [w]hether the settlement agreement is enforceable depends upon the application of contract principles. Yet before contract principles can be applied, the judgment must be vacated. Nevertheless, the judgment cannot be vacated unless the infirmity in the contract is shown.

*Id*. at 240 n. 2. Stated differently, because nothing in the record in that case required the superior court to declare the settlement agreement invalid, no basis existed for relief under Rule 60(b).

**¶25** Similarly, the parties in *Republic National* disputed the amount due under a note secured by a deed of trust. 137 Ariz. at 63. Faced with an approaching deadline, the parties stipulated to dismiss the claims with prejudice, and a judgment was entered accordingly. *Id*. The next day, the party whose claims were dismissed moved to vacate the judgment pursuant to Rule 60(b)(4) and (b)(6), contending the settlement was entered under duress. *Id*. at 67. The superior court granted the motion. *Id*. at 63. Citing *Lamb*, we explained that because the stipulation required application of contract principles, the enforceability of the stipulation needed to be decided before the merits of the Rule 60 motion could be addressed. *Id*. at 64. We reversed, concluding that "[p]urely and simply, the order setting aside the stipulated judgment in this case cannot rest upon a [Rule 60(b)] ground where we have found the stipulation itself to be enforceable as a contract notwithstanding the claim of duress." *Id.* at 67.

**¶26** In *Emmons*, the parties entered a settlement agreement after the jury had returned a verdict for the plaintiff but before the punitive damages phase of the trial. 192 Ariz. at 510–11, ¶¶ 1, 4. The superior court then dismissed the jury and cancelled the remainder of the trial. *Id.* at 511, ¶ 5. After discovering that a precluded document was inadvertently marked into evidence and sent into the jury room, a party filed a motion to set aside, which the court granted based on mutual mistake. *Id.* at 511–12, ¶¶ 6, 7. We reversed, finding that contract principles did not support rescission of the agreement. *Id*. at 514, ¶¶ 22, 23.

**¶27** Notably, Groh's motion is substantively dissimilar from the motion causing *Lamb's* "procedural dilemma," and unlike the moving parties in *Lamb, Republic National*, and *Emmons*, Groh filed his motion solely under Rule 60(b)(6); he did not challenge the underlying settlement agreement under Rule 60(b)(1), nor did the superior court determine the validity of that agreement. To the contrary, the court's order explicitly states that its ruling "only grants [Groh's] request to vacate the stipulated forfeiture judgment." On this record, none of the three cases the State cites is controlling. Because Rule 60(b)(6) is equitable in nature and the validity of the settlement agreement underlying the judgment was not disputed, there was no need to analyze the judgment under contract principles. Thus, the court acted within its discretion in focusing solely on whether Groh demonstrated extraordinary circumstances of hardship or injustice as required under Rule 60(b)(6).

### D.    Attorneys' Fees and Costs

**¶28**        After the State filed its notice of appeal, Groh filed an application for attorneys' fees under A.R.S. § 13-2314. The State objected, asserting in part that the request was premature because Groh had not prevailed in the forfeiture action. The superior court denied the application without prejudice.

**¶29**        Groh requested attorneys' fees on appeal, citing § 13-2314 (A) and (D)(5). *See* ARCAP 21(a)(2). Section 13-2314(A) provides that if a defendant in a forfeiture action prevails on the claim, it "may be awarded costs and reasonable attorney fees incurred in defense of that claim," and subsection (D)(5) concerns a defendant's payment of "costs and expenses of the prosecution" if found liable. Given that neither party has yet prevailed in the forfeiture action, we defer to the superior court to decide whether to award attorneys' fees at the conclusion of this action, including fees incurred in this appeal. As the successful party on appeal, however, Groh is entitled to taxable costs upon compliance with ARCAP 21.

### CONCLUSION

**¶30**        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA