NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

DAVID ELLISTON, *Petitioner/Appellee,*

*v.*

CINDA ELLISTON, *Respondent/Appellant.*

No. 1 CA-CV 23-0089 FC

FILED 08-08-2024

Appeal from the Superior Court in Coconino County
No.  S0300DO202100459
The Honorable Brent Davidson Harris, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Davis Miles McGuire Gardner, PLLC, Tempe
By Michael D. Girgenti
*Counsel for Petitioner/Appellee*

Harris & Winger PC, Flagstaff
By Chad Joshua Winger
*Counsel for Respondent/Appellant*

<hr>

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Daniel J. Kiley and Judge D. Steven Williams joined.

<hr>

**C A T T A N I**, Judge:

¶1         Cinda Elliston ("Wife") appeals from a dissolution decree that categorized the marital residence she acquired with David Elliston ("Husband") during their marriage as community property. Wife challenges in particular the superior court's finding that disclaimer and quitclaim deeds signed by Husband were not valid because they were signed under duress. For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2         In 2019, the parties married in Idaho, where they lived in a home Wife owned before marriage. They later decided to move to Arizona and bought a new home there, paying the down payment with $27,000 in community funds and $25,000 in Husband's separate funds. They took title to the Arizona home as community property in late 2020. Wife then moved to Arizona while Husband stayed behind to prepare the Idaho home for sale. He made multiple trips from Idaho to Arizona to move the couple's belongings.

¶3         In late August 2021, while Husband was in Idaho and Wife was in Arizona, Wife demanded that Husband sign disclaimer and quitclaim deeds giving up his interest in the Arizona home. According to Husband, Wife threatened "to destroy everything [he] own[ed]" and "ruin [his] life" if he did not comply. Husband testified that all of his personal property, including heirlooms from his late father, was in the Arizona home under Wife's control.

¶4         Wife arranged for delivery of the deeds about a week later, and Husband scheduled a time and signed the deeds at his workplace in Washington state on August 27, 2021. Husband returned to Arizona a few days after that, and the parties lived together for several months. Husband petitioned for divorce in December 2021.

¶5         At trial, Husband claimed the deeds were invalid because he signed them under duress due to Wife's threats. Wife denied threatening

Husband and claimed he signed because she used her separate property (proceeds from the sale of her Idaho home) to pay off a substantial amount of the Arizona mortgage. Finding Husband to be more credible, the superior court found that Husband had signed the deeds under duress and thus that the deeds were void and the home was community property. The court ordered the home sold and the proceeds divided equally after accounting for the parties' separate property contributions. The dissolution decree allocated other community property and debts that are not relevant to this appeal.

¶6　　　　Wife timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶7　　　　Wife argues that the court erred by finding that Husband signed the deeds under duress. She further asserts that, even assuming initial duress, Husband subsequently ratified the deeds and waived his claim of duress.

¶8　　　　We review de novo the court's assessment of validity and enforceability of a contract as well as its ultimate classification of property as community or separate. *Estate of DeCamacho v. La Solana Care & Rehab, Inc.*, 234 Ariz. 18, 20, ¶ 9 (App. 2014); *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007). We consider the evidence in the light most favorable to upholding the decree, giving deference to the superior court's assessment of witness credibility. *Bell-Kilbourn*, 216 Ariz. at 522 n.1; *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019).

¶9　　　　Property acquired during the marriage is presumed to be community property, *see* A.R.S. § 25-211; *In re Marriage of Pownall*, 197 Ariz. 577, 582, ¶ 16 (App. 2000), and the party seeking to rebut that presumption must prove that the property is separate by clear and convincing evidence. *Brebaugh v. Deane*, 211 Ariz. 95, 98, ¶ 6 (App. 2005). A valid disclaimer deed, however, provides such proof and rebuts the community presumption. *Bell-Kilbourn*, 216 Ariz. at 523–24, ¶¶ 7, 11. The party seeking to overcome the effect of a disclaimer deed must prove grounds to invalidate the deed, such as duress, by clear and convincing evidence. *See Kline v. Kline*, 14 Ariz. 369, 374 (1912).

¶10　　　Preliminarily, Wife argues Husband waived the duress defense by failing to affirmatively assert it in his dissolution petition. But neither his petition nor Wife's response delineated specific assets as community or separate property or specifically addressed the character of

the Arizona home. Husband's proposed resolution statement listed the home as community property and, after Wife disputed that characterization in her motion for summary judgment, Husband timely and affirmatively asserted duress. He likewise raised duress as a contested issue in his pretrial statement. Husband's argument was not waived.

¶11 Wife next argues that the superior court lacked an adequate evidentiary basis to find that Husband had signed the disclaimer and quitclaim deeds under duress. Cognizable duress occurs when one party induces another to enter a contract by means of a wrongful threat that overrides the other's exercise of free will and judgment. *Dunbar v. Dunbar*, 102 Ariz. 352, 355–56 (1967); *Inter-Tel, Inc. v. Bank of Am.*, 195 Ariz. 111, 117, ¶¶ 35–36 (App. 1999); *see also* Restatement (First) of Contracts ("First Restatement") § 492(b) (1932) (assent induced by wrongful threat that causes "such fear as precludes [another] from exercising free will and judgment"); Restatement (Second) of Contracts ("Second Restatement") § 175(1) (1981) (assent induced by "improper threat . . . that leaves the victim no reasonable alternative").

¶12 Wife asserts that Husband failed to show any wrongful threat, instead acting solely on his own subjective belief that he had to sign the deed. A showing of duress requires proof of a "wrongful" or "improper" threat. First Restatement §§ 492–93; Second Restatement § 175 & cmt. a, § 176. A threat to wrongfully destroy another's property may constitute such a wrongful threat. *See* First Restatement § 493(d); Second Restatement § 176(1)(a); *cf. Republic Nat'l Life Ins. Co. v. Rudine*, 137 Ariz. 62, 66 (App. 1983) (suggesting that "a situation where one party acquiesces to avoid irreparable damage to its business or property interests" would qualify). And here, Husband testified that Wife had possession of all his personal property, including family heirlooms, when she threatened "to destroy everything [he] own[ed]" unless he signed the deeds. Although Wife denied making such threats, the court found Husband to be more credible than Wife in this regard, and we defer to that credibility assessment. *See Lehn*, 246 Ariz. at 284, ¶ 20.

¶13 Noting that Husband was unable to provide examples of past threats, Wife argues that Husband was acting based only on a subjective belief that she would destroy his property, which she asserts is insufficient to meet his burden of proof under *In re Estate of Cohen*, 105 Ariz. 337, 341–42 (1970). But in *Estate of Cohen*, the party asserting duress relied only on unpleasant but otherwise-innocuous statements as purported threats: that "[w]e don't want you in [the company]; that's a family company," and urging her to "[s]ettle this thing. If I have to fight, I'll fight, and I don't think

you want to fight. . . . You won't like the way I fight. I can be mean." *Id.* at 341. The party asserting duress construed these statements as threats of violence based on her perception of the speaker's tone of voice and on her own beliefs about the speaker's violent character based on "conversations with others." *Id.* The court noted that a threat to "fight" was "equally consistent with a threat of a legal fight as with a physical confrontation." *Id.* The court thus held that the claim of duress was based only on a "state of mind rather than hard facts" and was insufficient to establish duress. *Id.*

¶14 Here, in contrast, the threat "to destroy everything [Husband] own[ed]" unless he complied was an improper threat by its very terms, not a neutral statement that was perceived as improper based on tone. *Compare id.* And Husband's belief that Wife would follow through on the threat was based on his personal knowledge and interactions with Wife throughout the marriage, not expectations about her character built on hearsay. *Compare id.* Further, this statement was not equally consistent with an intention to resort to litigation; it was a wrongful threat to destroy property. *Compare id.* To be sure, the superior court could have credited the evidence differently, but the court had a reasoned basis for the conclusions it reached.

¶15 Wife next argues that Husband had reasonable alternatives to signing the deeds, so he necessarily was not acting under duress. The First Restatement characterizes this element as fear that "precludes [the] exercis[e] [of] free will and judgment," whereas the Second Restatement adopts the "no reasonable alternative" phrasing. *Compare* First Restatement § 492(b), *with* Second Restatement § 175(1). Wife invites us to clarify whether the First or Second Restatement framing of duress applies in Arizona. We need not resolve that issue here, however, because as applied in this case, both express the same concept. Under the First Restatement, the fear inducing the transaction need not be "the sole cause, [but] must be one without which the transaction would not have occurred." First Restatement § 492 cmt. f. Put differently, an individual lacks free will (as contemplated under the First Restatement) when the individual has no reasonable alternative (as phrased in the Second Restatement). Our analysis here is thus the same under either framework.

¶16 Wife highlights that several days passed between the threat and when Husband ultimately signed the deeds, and she argues that Husband could have consulted an attorney, initiated legal proceedings, or returned to Arizona to secure his property himself (perhaps with the assistance of law enforcement) rather than sign the deeds. Although the time between the threat and when Husband signed the deeds arguably weighs against Husband's assertion of duress, the timing is not

independently dispositive, and the superior court reasonably found that Husband's fears were not alleviated in the interim. Recourse to counsel or filing legal proceedings might have been viable options if Husband had been nearby, but Husband was a 22-hour drive away from the Arizona home where Wife had exclusive control over the property at the time. Neither of these options would necessarily have prevented Wife from destroying the property in her exclusive possession 1,200 miles away. *See* Second Restatement § 175 cmt. b ("[T]he mere availability of a legal remedy is not controlling if it will not afford effective relief to one in the victim's circumstances."). Likewise, as the superior court found, given the distance involved and the nature of the dispute, it would have been difficult for Husband to protect his property on his own or to expect law enforcement to intervene in time. Although there was evidence from which the superior court could have reached a different conclusion, we do not reweigh conflicting evidence or redetermine the preponderance of the evidence on appeal. *In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999). Accordingly, we affirm the court's ruling that Husband signed the deeds under duress.

¶17            Finally, Wife argues that Husband ratified the deeds by conduct, thereby forfeiting his right to void them based on duress. "A contract entered into under duress may be ratified and become binding" if, after no longer under duress, the injured party "manifests . . . an intention to affirm it, or exercises dominion over things restoration of which is a condition of his power of avoidance." *Hubbard v. Geare*, 77 Ariz. 262, 264–65 (1954) (emphasis omitted) (quoting First Restatement § 484). Here, Wife contends Husband ratified the deeds when he returned to Arizona, continued living with Wife, and made improvements to the Arizona home. But this conduct is not necessarily incompatible with Husband's view that because he signed the deeds under duress, he remained a joint owner of the Arizona home. Wife's position, in contrast, would have forced Husband to immediately make other living arrangements, notwithstanding remaining married and notwithstanding the challenges that changing residences would entail. Husband's conduct did not ratify the deeds.

**CONCLUSION**

**¶18**        We affirm.  Both sides request an award of attorney's fees and costs on appeal under A.R.S. § 25-324.  After considering relevant factors and in an exercise of our discretion, we deny both requests.  As the successful party, Husband is entitled to an award of costs on appeal upon compliance with ARCAP 21.  *See* A.R.S. § 12-342(A).



AMY M. WOOD • Clerk of the Court
FILED:    AGFV